1  Mark J. Tamblyn (State Bar No. 179272)
   Email: mjt@wtwlaw.com
2  **WEXLER TORISEVA WALLACE LLP**
   1610 Arden Way, Suite 290
3  Sacramento, California 95815
   Telephone: (916) 568-1100
4  Facsimile: (916) 568-7890

5
   Bernard Persky
6  Email: Bpersky@labaton.com
   Hollis L. Salzman
7  Email: Hsalzman@labaton.com
   Kellie Lerner
8  Email: Klerner@labaton.com
9  **LABATON SUCHAROW LLP**
   140 Broadway
10 New York, NY 10005
   Telephone: (212) 907-0700
11 Facsimile: (212) 818-0477

12
   Attorneys for Plaintiff and the Class
13 (Additional Counsel on Signature Page)

14                 UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16 JEMS SOFTWARE AND CONSULTING,        )
17 INC., on behalf of                   )
   itself and all others similarly situated, )
18                                       )  **Case No.:**
                                         )
19                           Plaintiff,  )  **CLASS ACTION COMPLAINT**
                                         )
20       vs.                             )  **DEMAND FOR JURY TRIAL**
                                         )
21 LEXAR MEDIA, INC.;                    )
22 HITACHI AMERICA, LTD.;                )
   HITACHI, LTD.;                        )
23 HITACHI ELECTRONIC DEVICES USA;       )
   HYNIX SEMICONDUCTOR AMERICA,          )
24 INC.;HYNIX SEMICONDUCTOR, INC.;       )
   MICRON TECHNOLOGY, INC.;              )
25 MICRON SEMICONDUCTOR                  )
   PRODUCTS, INC.;                       )
26 MITSUBISHI ELECTRIC CORPORATION;      )
27 MITSUBISHI ELECTRIC AND               )
   ELECTRONICS USA, INC.;                )
28 MOSEL VITELIC CORPORATION;            )

CLASS ACTION COMPLAINT

MOSEL VITELIC, INC;
RENESAS TECHNOLOGY
CORPORATION; RENESAS
TECHNOLOGY AMERICA, INC.;
SAMSUNG SEMICONDUCTOR, INC.;
SAMSUNG ELECTRONICS COMPANY,
LTD.; SANDISK CORPORATION;
STMICROELECTRONICS N.V.;
STMICROELECTRONICS, INC.;
TOSHIBA CORPORATION;
TOSHIBA AMERICA, INC.; TOSHIBA
AMERICA ELECTRONIC
COMPONENTS, INC.,
WINBOND ELECTRONICS
CORPORATION; WINBOND
ELECTRONICS CORPORATION
AMERICA, INC.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

                              Defendants.      )

_____  )

## I.   **INTRODUCTION**

1.     Plaintiff JEMS Software and Consulting, Inc. brings this lawsuit as a Class Action on behalf of individuals and entities who purchased Flash Memory directly from Defendants, their subsidiaries, agents, or co-conspirators during the period from at least January 1, 1999 through the present ("Class Period").

2.     The term "Flash Memory" refers to all types of Flash Memory sold during the Class Period, including AND, Not AND ("NAND"), and Not OR ("NOR") technologies.  For purposes of this complaint, Flash Memory excludes all types of static random access memory ("SRAM") or dynamic random access memory ("DRAM") sold during the Class Period.

3.     Flash Memory is a non-volatile computer memory that can be electronically erased and reprogrammed.  It is primarily used in memory cards, but it is also found in digital audio players, digital cameras, DVD players, mobile phones and video game consoles.  Flash Memory is the most popular form of computer memory, and costs far less than competing forms of memory.  As a result, it has become the dominant technology wherever a significant amount of non-volatile, solid-state storage is needed.  It is also a stand alone product.

4. Defendants participated in cartel-like behavior to fix the price of Flash Memory. Because of Defendants' unlawful conduct and conspiracy, Plaintiff and other members of the Class paid artificially inflated prices for Flash Memory. Plaintiff and other members of the Class who purchased Flash Memory have been damaged by Defendants' illegal actions.

## II.   JURISDICTION AND VENUE

5. This complaint is filed pursuant to §16 of the Clayton Act, 15 U.S.C. § 26, and § 1 of the Sherman Act, 15 U.S.C. §1. Plaintiff and the Class also seek to recover the costs of suit, including reasonable attorneys' fees, for the injuries suffered as a result of Defendants' violations of federal antitrust law.

6. This Court's jurisdiction is based on 28 U.S.C. §§1331 and 1337. The Court also has jurisdiction under 28 U.S.C. §1332 because the amount in controversy for the Class exceeds $5,000,000 and there are members of the Class who are citizens of a different state than the defendants.

7. Venue is proper in this Judicial District given that Defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in the District.

## III.   INTRADISTRICT ASSIGNMENT

8. Pursuant to Civil L.R. 3-2(d) and Civil L.R. 3-5(b), Plaintiff states that assignment to the San Francisco Division of this Court is appropriate because it arises in San Francisco County.

## IV.   PARTIES

### A.   Plaintiff

9. JEMS Software and Consulting, Inc. is a corporation with its principle place of business in Trenton, New Jersey. Plaintiff purchased Flash Memory directly from one or more of the Defendants during the Class Period at artificially high prices as a result of the Defendants' illegal conspiracy and unlawful acts.

**B.    Defendants**

10.    Defendant **HYNIX SEMICONDUCTOR AMERICA, INC.** is a wholly owned and controlled subsidiary of Defendant Hynix Semiconductor, Inc. with its principal place of business at 3101 North First Street, San Jose, California, 95134.  Hynix Semiconductor America, Inc. is a California corporation.  During the Class Period, Hynix Semiconductor America, Inc. sold and distributed Flash Memory to customers throughout the United States.  Hynix Semiconductor, Inc. and Hynix Semiconductor America, Inc. are referred to collectively herein as "Hynix."

11.    Defendant **HYNIX SEMICONDUCTOR, INC.** is a business entity organized under the laws of South Korea, with its principal place of business at SAN 136-1, Ami-Ri Bubal-eub, Icheon-si, Kyoungki-do, Korea, 467-701.  During the Class Period, Hynix Semiconductor, Inc. manufactured, sold and distributed Flash Memory to customers throughout the United States.

12.    Defendant **HITACHI AMERICA, LTD** is incorporated in the State of New York with its principle place of business at 50 Prospect Ave, Tarrytown, New York 10591.  It is a wholly owned subsidiary of Defendant Hitachi Ltd.  During the Class Period, Hitachi America Ltd. sold and distributed Flash Memory to customers throughout the United States.

13.    Defendant **HITACHI, LTD.** is a business entity organized under the laws of Japan with its principal place of business at 6-1 Marunoyuchi Center Building 13F Chiyodaku, Tokyo, 100-8220, Japan.  During the Class Period Hitachi, Ltd. sold and distributed Flash Memory to customers throughout the United States.

14.    Defendant **MICRON TECHNOLOGY, INC.** is a Delaware Corporation with its principal place of business at 8000 South Federal Way, Boise, Idaho, 83716.  During the Class Period, Micron Technology, Inc. manufactured, sold and distributed Flash Memory to customers throughout the United States.

15.    Defendant **MICRON SEMICONDUCTOR PRODUCTS, INC.** is a corporation formed under the laws of Delaware.  Micron Semiconductor Products, Inc. is a wholly owned and controlled subsidiary of Defendant Micron Technology, Inc. with its principal place of

1    business at 8000 South Federal Way, Boise, Idaho, 83716. During the Class Period, Micron

2    Semiconductor Products, Inc. sold and distributed Flash Memory to customers throughout the

3    United States.

4         16.    Defendant **LEXAR MEDIA, INC.** is a Delaware corporation with its principal

5    place of business at 47300 Bayside Parkway, Fremont, California, 94538. During the Class

6    Period, Lexar Media, Inc. sold and distributed Flash Memory to customers throughout the United

7    States. Lexar Media was bought by Micron Technology, Inc. Lexar Media, Inc., Micron

8    Technology, Inc., and Micron Semiconductor Products, Inc. are referred to collectively herein as

9    "Micron."

10        17.    Defendant **MITSUBISHI ELECTRIC CORPORATION,** is a business entity

11   organized under the laws of Japan, with its principal place of business at Tokyo Building 2-7-3,

12   Marunouchi, Chiyoda-ku, Tokyo, 100-8310, Japan. During the Class Period, Mitsubishi Electric

13   Corporation sold and distributed Flash Memory to customers throughout the United States.

14        18.    Defendant **MITSUBISHI ELECTRIC AND ELECTRONICS USA, INC.,** is

15   incorporated in the State of Delaware with its principal place of business at 500 Corporate Wood

16   Parkway, Vernon Hills, Illinois 60061. It is a wholly owned subsidiary of Mitsubishi Electric

17   Corporation. During the Class Period, Mitsubishi Electric and Electronics USA, Inc. sold and

18   distributed Flash Memory to customers throughout the United States. Defendant Mitsubishi

19   Electric Corporation and Mitsubishi Electric and Electronics USA, Inc. are referred to

20   collectively herein as "Mitsubishi."

21        19.    Defendant **MOSEL VITELIC CORPORATION** is incorporated in the State of

22   California with its principal place of business at 3910 North First Street, San Jose, California

23   95134. It is a wholly owned subsidiary of Mosel Vitelic Inc. During the Class Period, Mosel

24   Vitelic Corporation sold and distributed Flash Memory to customers throughout the United

25   States.

26        20.    Defendant **MOSEL VITELIC, INC.** is a business entity organized under the

27   laws of Taiwan with its principal place of business at No. 19 Li Hsin Road, Science-Based

28   Industrial Park, Hsinchu, Taiwan. During the Class Period, Mosel Vitelic, Inc. sold and

1  distributed Flash Memory to customers throughout the United States. Defendant Mosel Vitelic

2  Corporation and Mosel Vitelic, Inc. are referred to collectively herein as "Mosel."

3        21.    Defendant **RENESAS TECHNOLOGY CORPORATION** is a business entity

4  organized under the laws of Japan with its principal place of business at Marunouchi Building, 4-

5  1, Marunouchi 2-chrome, Chiyoda-ku, Tokyo, 100-6334, Japan. Renesas Technology

6  Corporation was established on or about April 1, 2003 as a joint venture of Hitachi and

7  Mitsubishi. During the Class Period, Renesas Technology Corporation sold and distributed

8  Flash Memory to customers throughout the United States.

9        22.    Defendant **RENESAS TECHNOLOGY AMERICA, INC.** is a Delaware

10  corporation and is a wholly owned and controlled subsidiary of Renesas Technology Corporation

11  with its principal place of business at 450 Holger Way, San Jose, California, 95134-1368.

12  During the Class Period, Renesas Technology America, Inc. sold and distributed Flash Memory

13  to customers throughout the United States. Defendants Renesas Technology Corporation and

14  Renesas Technology America, Inc. are referred to collectively herein as "Renesas."

15        23.    Defendant **SAMSUNG SEMICONDUCTOR, INC.** is a California corporation

16  and is a wholly owned and controlled subsidiary of Samsung Electronics Company, Ltd. with its

17  principal place of business at 3655 North First Street, San Jose, California, 95134. During the

18  Class Period, Samsung Semiconductor, Inc. sold and distributed Flash Memory to customers

19  throughout the United States.

20        24.    Defendant **SAMSUNG ELECTRONICS COMPANY, LTD.** is a business entity

21  organized under the laws of South Korea, with its principal place of business at Samsung Main

22  Building, 250-2 ga, Taepyung-ro, Chung-gu, Seoul, Korea. During the Class Period, Samsung

23  Electronics Company, Ltd. sold and distributed Flash Memory to customers throughout the

24  United States. Samsung Electronics Company, Ltd. and Samsung Semiconductor, Inc. are

25  referred to collectively herein as "Samsung."

26        25.    Defendant **SANDISK CORPORATION** is a Delaware Corporation with its

27  principal place of business at 601 McCarthy Boulevard, Milpitas, California, 95035. During the

28

1  Class Period, SanDisk Corporation sold and distributed Flash Memory to customers throughout

2  the United States.

3        26.    Defendant **STMICROELECTRONICS N.V.** is a business entity organized

4  under the laws of the Netherlands, with its principal place of business at 39, Chemin du Champ

5  des Filles, C. P. 21, CH 1228 Plan-Les-Ouates, Geneva, Switzerland.  During the Class Period,

6  ST Microelectronics N.V. sold and distributed Flash Memory to customers throughout the

7  United States.

8        27.    Defendant **STMICROELECTRONICS, INC.** is a Delaware corporation and is a

9  wholly owned and controlled subsidiary of ST Microelectronics N.V. with its principal place of

10  business located at 1310 Electronics Dr., Carrollton, TX, 75006-7005.  During the Class Period,

11  ST Microelectronics, Inc. sold and distributed Flash Memory to customers throughout the United

12  States.  ST Microelectronics N.V. and ST Microelectronics, Inc. are referred to collectively

13  herein as "STMicroelectronics."

14        28.    Defendant **TOSHIBA CORPORATION** is a business entity organized under the

15  laws of Japan, with its principal place of business at 1-1 Shibaura, 1-chrome Minato-ku, Tokyo,

16  105-8001, Japan.  During the Class Period, Toshiba Corporation sold and distributed Flash

17  Memory to customers throughout the United States.

18        29.    Defendant **TOSHIBA AMERICA CORPORATION** is a Delaware corporation

19  and is a wholly owned and controlled subsidiary of Toshiba Corporation with its principal place

20  of business at 1251 Avenue of the Americas, Suite 4110, New York, New York, 10020.  During

21  the Class Period, Toshiba America Corporation manufactured, sold and distributed Flash

22  Memory to customers throughout the United States.

23        30.    Defendant **TOSHIBA AMERICA ELECTRONIC COMPONENTS, INC.** is a

24  California corporation and is a wholly owned and controlled subsidiary of Toshiba Corporation

25  with its principal place of business located at 19900 MacArthur Boulevard, Suite 400, Irvine,

26  California, 92612.  During the Class Period, Toshiba America Electronic Components, Inc. sold

27  and distributed Flash Memory to customers throughout the United States.  Toshiba Corporation,

28

1  Toshiba America Corporation, and Toshiba America Electronic Components, Inc. are referred to

2  collectively herein as "Toshiba."

3      31.     Defendant **WINBOND ELECTRONICS CORPORATION** is a business entity

4  organized under the laws of Taiwan with its principal place of business at No. 4 Creation Road 3,

5  Science-Based Industrial Park, Hsinchu, 300, Taiwan.  During the Class Period, Winbond

6  Electronics Corporation sold and distributed Flash Memory to customers throughout the United

7  States.

8      32.     Defendant **WINBOND ELECTRONICS CORPORATION AMERICA, INC.**

9  is incorporated in the State of Delaware with its principal place of business at 2727 North First

10  Street, San Jose, California 95134.  It is a wholly owned subsidiary of Winbond Electronics

11  Corporation.  During the Class Period, Winbond Electronics Corporation America Inc. sold and

12  distributed Flash Memory to customers throughout the United States.  Defendant Winbond

13  Electronics Corporation and Winbond Electronics Corporation America, Inc. are referred to

14  collectively herein as "Winbond."

15      **C.     Agents And Co-Conspirators**

16      33.     At all relevant times, each Defendant acted as the agent or joint venturer of or for

17  other Defendants with respect to the acts, violations and common course of conduct alleged

18  herein.  Each Defendant ratified and/or authorized the wrongful acts of each of the Defendants.

19      34.     Defendants, along with certain other corporations, entities, and persons not named

20  as Defendants are co-conspirators in the violations and cartel behavior alleged in this Complaint.

21  These co-conspirators have performed acts and made statements in furtherance of the antitrust

22  violations and conspiracies alleged herein.

23      35.     Defendants, and each of them, are individually sued as participants and as aiders

24  and abettors in the improper acts, plans, schemes, and transactions that are the subject of this

25  complaint.

26

27

28

CLASS ACTION COMPLAINT                                                                8

1  **V.    CLASS ACTION ALLEGATIONS**

2      36.    Plaintiff brings this action on behalf of itself and all others similarly situated ("the

3  Class") in accordance with Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).  The

4  Class is defined as follows:

> All persons and entities in the United States who, from January 1,
> 1999 through the present, purchased Flash Memory directly from
> one or more of the Defendants.  Excluded from this Class are the
> Defendants; their parents, predecessors, successors, subsidiaries,
> units, divisions, employees, officers, directors; co-conspirators and
> any and all judges and justices (and members of their immediate
> families) assigned to hear any aspect of this case.

9      37.    This action is appropriate for class treatment under Federal Rule of Civil

10 Procedure 23 because:

11      a.    The Class is ascertainable and there is a well-defined community of interest

12            among the members of the Class;

13      b.    Plaintiff is informed and believes, and thus alleges, that based on the nature of

14            the trade and commerce involved and the number of direct purchasers of Flash

15            Memory, there are hundreds and possibly thousands, of class members.  As a

16            result, joinder of Class members is not practicable;

17      c.    Plaintiff's claims are typical of the Class members' claims.  Plaintiff

18            purchased Flash Memory in the United States, and therefore Plaintiff's claims

19            arise from the same conduct giving rise to the Class members' claims.

20            Similarly, the relief sought is common to the Class;

21      d.    The following are common questions of law and fact among Plaintiff and the

22            Class:

23            i.    whether Defendants formed and operated a combination or conspiracy

24                  to fix, raise, maintain or stabilize the prices of Flash Memory;

25            ii.   whether Defendants' combination or conspiracy caused Flash Memory

26                  prices to be higher than they would have been in the absence of

27                  Defendants' conduct;

28

iii.  whether Defendants' conduct caused injury to the business or property of Plaintiff and the members of the Class;

iv.  the appropriate measure of damages suffered by the Class;

v.  the operative time period of Defendants' combination or conspiracy;

vi.  the identities of the co-conspirators;

vii.  whether an injunction is necessary to cause Defendants not to engage in illegal acts;

viii.  whether Defendants' conduct constitutes a violation of § 1 of the Sherman Act, 15 U.S.C. §1;

ix.  whether Defendants engaged in concealment of their conspiracy from the Plaintiff and other Class members;

e.  These and other questions of law and fact are common to the members of the Class and therefore predominate over any questions affecting only individual members of the Class;

f.  Plaintiff will fairly and adequately protect the interests of the Class and Plaintiff has no interests that are antagonistic to other members of the Class;

g.  Plaintiff has retained counsel competent and experienced in the prosecution of antitrust litigation and class actions to represent itself and the Class;

h.  A class action is superior to other available methods for the fair and efficient adjudication of this dispute. Individual joinder of all damaged Class members is impractical. Further, because the damages suffered by individual Class members are relatively small, it would not be feasible for Class members to vindicate their claims unless Rule 23's class action procedures are applied. Individual litigation of these claims would be costly and could create the risk of inconsistent or contradictory judgments and will also greatly magnify the delay and expense to all parties and to the judicial system. The use of the class action procedure presents many less case management difficulties. A single adjudication, economies of scale, and the supervision by a single court

1    are salutary goals which may be achieved through use of the class mechanism;

2    and

3    i.    Unless the class procedure is used, Defendants will be unjustly enriched

4    because they will be able to retain the benefits of their wrongful conduct.

5    **VI.    MARKET AND COMMERCE**

6    38.    Throughout the Class Period, Defendants and their co-conspirators engaged in the

7    business of marketing and selling Flash Memory throughout the United States.  During the Class

8    Period of January 1999 through the present, total sales of Flash Memory were in the billions of

9    dollars.

10    39.    The market for the manufacture and sale of Flash Memory is conducive to the

11    type of collusive activity alleged here.  There are significant manufacturing and technological

12    barriers to entry in the Flash Memory industry.  A state-of-the-art fabrication plant can cost

13    upwards of $2 billion and changing technology requires constant research and development

14    investment.  See, e.g., Yun-Hee Kim, Streetlnsider.com, 8-27-07 (Interview: "SanDisk, Hynix

15    Plan New Flash Memory Plant"),

16    (http://www.streetinsider.com/Basic+Content/INTERVIEW:+SanDisk,Hynix+Plan+New+Flash

17    +Memory+Plant/2819007.html).

18    40.    The Flash Memory market is oligopolistic in nature.  Samsung is the clear market

19    leader followed by Toshiba, Hynix, Renesas, and Micron.

20    41.    The market for Flash Memory is large, with worldwide revenues in excess of $12

21    billion in 2006, and growing.

22    **VII.    FLASH MEMORY MARKET**

23    42.    The market for the manufacture and sale of Flash Memory is subject to high

24    manufacturing and technological barriers to entry.  Efficient fabrication plants are large and

25    costly.  Flash Memory is also subject to technological advances, so that firms within the industry

26    must undertake significant research and development expenses.

27    43.    Further, Flash Memory is a homogeneous product sold by Defendants and

28    purchased by Plaintiff and members of the Class primarily on the basis of price.

1    VIII.  **FACTUAL BACKGROUND**

2        A.    **Flash Memory**

3        44.        Flash Memory is a type of electronic memory chip with a read-only memory

4    that retains its data when the power is turned off and that can be electronically erased and

5    reprogrammed without being removed from the circuit board.  Flash Memory is non-volatile,

6    meaning that it does not need continuous power to maintain the information stored for the chip.

7    Flash Memory is produced in the form of an integrated chip which is used in a variety of

8    applications, including memory cards, digital audio players, DVD players, digital cameras,

9    mobile phones, video game consoles, USB storage devices, fax machines and personal

10   computers.  Some examples of Flash Memory are:

11               a.   a computer's BIOS chip,

12               b.   CompactFlash (most often found in digital cameras),

13               c.   SmartMedia (most often found in digital cameras),

14               d.   Memory Stick (most often found in digital cameras),

15               e.   PCMCIA Type I and Type II memory cards ,

16               f.   memory cards for video game consoles,

17               g.   iPod and Shuffle music players use NAND Flash Memory chips to store

18                    songs,

19               h.   Apple's iPhone.

20       45.        Flash memory is also a stand-alone product.  It is not always subsumed within, or

21   a part of, another product.

22       B.    **Applications**

23       46.        Examples of non-volatile memory include read only memory, Flash Memory,

24   hard disks, floppy disk drives, magnetic tape and optical drives.  Non-Volatile Memory is

25   usually used for the task of secondary storage or long-term persistent storage.  The most widely

26   used primary storage is a volatile form of RAM, meaning when the computer is shut down,

27   anything contained in RAM is lost.

28

CLASS ACTION COMPLAINT                                                                    12

1    47.    Flash Memory has long been used to make thumb-size USB drives popular for

2    transferring data between home and office.  What is new is that Flash memory is just now

3    becoming cheap enough that flash chips can be used as the innards of solid-state drives to replace

4    traditional disk drives, which provide long-term storage on computers.  This new breed of solid-

5    state drives has the same housings and connections as hard-disk drives.  Computers will not

6    know the difference, except that the solid-state drive will be lighter, quieter, more energy

7    efficient and, absent moving parts, more reliable.

8    48.    Unlike hard-disk drives, Flash Memory handles data all electronically without the

9    use of motors.  A traditional disk drive takes time to spin around and position itself so that the

10    needed data are underneath the drive "head" that does the reading and writing.  There is no such

11    delay with flash, because it's all nonmoving, solid-state electronics.  The minute or so needed to

12    boot up from a hard drive can thus be cut up to half if Flash Memory is used instead.  Flash

13    Memory PCs are also lighter.  Samsung Electronics Co. has developed a Flash Memory storage

14    device that comes in at 15 grams, 25% the weight of a hard drive.

15    **C.    Types of Flash Memory**

16    49.    Currently, NOR and NAND are the two main types of nonvolatile memory chips

17    used in electronic devices to retain data when power is switched off.  NOR chips excel at reading

18    data at high speed, making them suitable for running software in cell phones, while NAND chips

19    - widely used in digital cameras and music players - write data at high speed and generally have

20    greater storage capacity.

21    50.    NOR and NAND are Flash Memory chips constructed of either NOR or NAND

22    logic gates.  Electronic logic gates are a collection of transistors and resistors that perform a

23    logical operation on one or more logic inputs and produce a single logic output.  The logic

24    normally performed is boolean logic and is commonly found in digital circuits.  Transistors make

25    up logic gates.  Logic gates make up circuits.  Circuits make up electronic systems.  NOR chips

26    function like a computer's main memory, while NAND works like a hard disk.  An example

27    would be, in a digital camera, NOR Flash Memory contains the camera's internal software, while

28    NAND Flash Memory is used to store the pictures.

51.    A logic gate is an elementary building block of a digital circuit. There are seven logic gates: NAND, NOR, AND, OR, NOT, XOR, and XNOR. Most logic gates have two input terminals and one output terminal. Every terminal is in one of two binary conditions that is represented by different voltage.

52.    NOR Flash Memory was developed by Intel in 1988. NOR Flash Memory supports one-byte random access and "execute in place" (XIP), which means machine instructions can be obtained and executed directly from Flash Memory without going into main memory (DRAM) first as is required with NAND Flash Memory. NOR Flash Memory has a lifespan of about 100K write cycles. As with all Flash Memory, the cells must be erased in large blocks before being written. Erasing a block of typically 16KB takes several seconds, but reading and writing one byte at a time is very fast. NAND Flash Memory was developed by Toshiba a year after Intel's NOR Flash Memory. NAND Flash Memory functions like a disk rather than memory. Less expensive than NOR, NAND Flash Memory can be rewritten up to a million times, and erasing and writing NAND is faster than NOR.

53.    AND is another stand alone NAND-like chip. Hitachi and Mitsubishi manufactured, sold, and distributed AND. Renesas, a product of the merger between Hitachi and Mitsubishi, also produces AND and AG-AND chips.

**D.    Genesis of Flash Memory Conspiracy**

54.    The Flash Memory cartel activities are facilitated through numerous trade association activities. All of the Defendants are members of the Joint Electronic Device Engineering Council ("JEDEC") Solid State Technology Association, a standard-setting organization which over the years has held dozens of general membership meetings and regional meetings across the world. In addition, Hynix and Micron are among the founding members of the Open NAND Flash Interface group, the purpose of which is to meet and discuss standards and production of NAND Flash Memory products. Among the other members of the ONFI group are Hitachi & Winbond.

a.    Defendants had ample opportunities to meet over the years at various electronics conventions and other industry activities and expos across the

1    world to conduct cartel activities.  For example, Hitachi, Lexar (now part of

2    Micron), Mitsubishi, Renesas, Samsung, Toshiba and Winbond, or their

3    affiliates, are members of the CompactFlash Association which was founded

4    in 1995 to promote various forms of flash memory.  Over the years,

5    CompactFlash members have met in Japan, Germany, the United Kingdom

6    and the United States.

7    b.  Members first got together in New Orleans in February 1997 to meet and give

8    demonstrations of their products at PMA 97.  PMA stands for Photo

9    Marketing Association, which annually conducts an international photo

10    industry expo.  On March 10-11, 1997, CompactFlash held its first general

11    meeting, with product demonstrations and press briefings, in London.

12    c.  Other CompactFlash meetings and presentations were held:

13           •    January 8, 1998, Consumer Electronics Show in Las Vegas.

14           •    February 10, 1998, PMA 98 in New Orleans.

15           •    September 16, 1998, Photokina 98 in Cologne, Germany.

16           •    September 30, 1998, World PC Expo in Tokyo.

17           •    January 7, 1999, International Consumer Electronics Show,

18    1999 in Las Vegas.

19           •    February 18, 1999, PMA 1999 in Las Vegas.

20           •    September 7, 1999, World PC Expo 99 in Tokyo.

21           •    December 27, 1999, Consumer Electronics Show 2000 in

22    Las Vegas.

23           •    September 20, 2000, Photokina 2000 in Koln, Germany.

24           •    October 17, 2000, World PC Expo 2000 in Tokyo.  At this

25    event Compact Flash also conducted "a free Host Develop

26    Seminary" at Tokyo Fashion Town, according to a news

27    release.  "Presentations will be in Japanese and handouts

28    will also be in Japanese," the release said.

- January 6, 2001, Consumer Electronics Show 2001 in Las Vegas.
- February 11, 2001, PMA 2001 in Orlando, Florida.
- January 8, 2002, International Consumers Electronics Show 2002 in Las Vegas.
- September 25, 2002, Photokina 2002 in Koln Germany.
- October 16, 2002, World PC Expo in Tokyo.
- September 17, 2003, World PC Expo in Tokyo.
- January 5, 2006, International Consumers Electronics Show 2006 in Las Vegas.  The CompactFlash Association and 60 of its members met at the show to celebrate the 10th anniversary of the founding of the association and presented exhibits, according to a news release.

55.     The September 7, 1999 World PC Expo '99 in Tokyo was of special significance. The CompactFlash Association had 50 members exhibiting at the Expo, a record number for an international show.  In addition to special meetings, dinners and other activities at the Expo (which attracted 350,000 corporate employees and IT professionals) that could translate into cartel actions, the sponsor of the Expo said in a news release: "Networking opportunities will also be promoted for overseas exhibiting companies by holding an International Business Partnership Party where company representatives can meet with Japanese buyers and an International Business Seminar that will examine IT industry/market trends in China, India and Taiwan." The release also said: "WORLD PC EXPO has gained a reputation as a gateway to the world's second largest market in IT and as a place where the alliances and OEM partners from the information home appliance age assembly for Asia's largest IT showcase...Most overseas exhibiting companies see the EXPO as a chance to meet potential business partners in Asian markets, including the vast emerging market in China."

56.     The structure of the market allowed Defendants to maintain and enforce their cartel, using methods such as price signaling.  On March 20, 2006, Hynix warned investors that

1   the prices of NAND Flash Memory could fall as much as 50% for the year.  The next day,

2   Samsung publicly announced that prices would recover and stabilize.  As of August 2006, Flash

3   Memory prices had stabilized, in part, as a result of reduced inventory from manufacturers.

4   "Apple to spur NAND Flash Market, firm says," Electronic News, August 9, 2006.

5          57.    One commentator noted the pervasiveness of cartel activity among the Defendants

6   and others within the overall semiconductor industry - "If the DOJ wanted to, it could just go

7   down every line in the semiconductor industry and find the same issue,' said Gartner, Inc.

8   analyst Richard Gordon. 'That's because there are a relatively few number of suppliers in the

9   chip industry and an open flow of communication between competitors and customers, who may

10  not define price fixing the same way the DOJ does,' he said."

11  (http://blog.tmcnet.com/regulations/enforcement/doj-subpoenas-go-to-amd-nvidia-antitrust-

12  violations-eyed.asp).

13         58.    Certain websites, such as DRAMeXchange (found at

14  http://www.dramexchange.com), allow Defendants to track each other's Flash Memory prices as

15  well.

16         59.    Several of the Defendants Headquarters are located within blocks of each other on

17  the same street in San Jose, California.  This proximity provides unlimited opportunities for

18  those Defendants to participate in Flash Memory cartel activities.

19      •    Hynix Semiconductor America, Inc., 3101 North First Street

20      •    Mosel Vitelic Corporation, 3910 North First Street

21      •    Samsung Semiconductor, Inc., 3655 North First Street

22      •    Winbond Electronics Corporation America, Inc. 2727 North First Street.

23      •    Another Defendant in San Jose, Renesas Technology America, Inc., is located

24          nearby at 450 Holger Way.

25         60.    Additionally, Defendants Mosel Vitelic, Inc and Winbond Electronic Corporation

26  are located in the same technology office park, Science-Based Industrial Park, in Hsinchu,

27  Taiwan.

28

CLASS ACTION COMPLAINT                                                                    17

61.    All of the above opportunities to exchange and monitor Flash Memory pricing information allowed Defendants to communicate their intended prices for Flash Memory to each other throughout the Class Period. These conversations were not simply the sharing of publicly available information. Rather, Defendants communicated with each other prior to price moves and collected competitive information similar to the pattern seen in the DRAM and SRAM markets. This information sharing was intended to, and in fact did, cause the price of Flash Memory to be stabilized and/or artificially inflated in violation of antitrust laws.

62.    There is also a great deal of cross-licensing and many cooperative arrangements in the Flash Memory industry, creating additional opportunities for collusive activity. By way of example, SanDisk announced in a press release dated 8/19/2002 that it had signed cross license and supply agreements concerning flash memory technology with Samsung.

63.    Other cooperative arrangements include joint ventures, which are common throughout the industry. For example, in March of this year, SanDisk announced that it had signed an agreement with Hynix for a joint venture to manufacture memory components and sell NAND memory system solutions. SanDisk 10-Q filed on 8-07-07. At about the same time, SanDisk also entered into a cross-licensing agreement with Hynix that covers NAND flash memory products. (http://www.streetinsider.com/Basic+Content/INTERVIEW:+SanDisk,Hynix+Plan+New+Flash +Memory+Plant/2819007.html). SanDisk has also had long-standing joint ventures with Toshiba during the Class Period; see, e.g., 2006 Annual Report at 8 ("We and Toshiba have entered into several business ventures . . .With these ventures, we and Toshiba collaborate in the development and manufacture of NAND flash memory products."). STMicroelectronics had also entered into a joint venture agreement with Hynix in 2004 for the building of a front-end memory plant in China, and in 2001, STMicroelectronics had entered into a joint venture with Renesas to develop and license RISC processors. STMicroelectronics Form 20-F, March 14, 2007.

64.    During the Class Period, Defendants' collusive behavior artificially inflated the price of Flash Memory. Defendants participated in cartel-like behavior to fix the prices of these

1  products. Because of Defendants' unlawful conduct and conspiracy, Plaintiff and other members

2  of the Class paid artificially inflated prices for Flash Memory and, therefore, have been damaged

3  by Defendants' illegal actions.

4        **E.**    **Defendants Set Flash Memory Prices At Supra-Competitive Levels.**

5        65.    As a result of Defendants' cartel like activity, prices for Flash Memory have been

6  maintained at supra-competitive levels from at least 1999 through the present. Prior to 1999, the

7  average selling price for all Flash Memory was at a decline. Beginning in 2000, and continuing

8  through the first quarter of 2001, the aggregate average price of Flash Memory stabilized, then

9  increased.

10        66.    While Flash Memory prices began to somewhat decline at the end of 2001, the

11  cartel created by Defendants operated to palliate those declines so that prices were still at supra-

12  competitive levels. Defendants' collusive activity still continues and has had the effect of

13  keeping prices at supra-competitive levels.

14        **F.**    **The DOJ Is Currently Investigating The Flash Memory Market, As Well As The Market For Other Memory Chips.**

15

16        67.    The trend in the average prices of Flash Memory is similar to a contemporaneous

17  price movement in the DRAM market. The pricing, and behavior of, participants in the DRAM

18  market during this period is currently the subject of a price-fixing investigation by the Antitrust

19  Division of the U.S. Department of Justice. Several of the Defendants named herein are either

20  currently the subject of the DRAM investigation, or have pleaded guilty to price-fixing charges

21  with respect to DRAM. Samsung, for example, was fined $300 million by the United States in

22  October 2005 for participating in DRAM price-fixing. Samsung is also under investigation by

23  the DOJ (along with some of the other Defendants) for fixing the prices of SRAM. The agents

24  and employees of Samsung, Hynix, and Micron implicated in the DRAM price-fixing conspiracy

25  are the same agents and employees that are responsible for pricing SRAM and Flash Memory.

26  Samsung and Hynix have pled guilty to price-fixing in the DRAM market during the period from

27  1999 to 2002 and have paid substantial fines for those unlawful activities. Samsung has paid

28  $300 million while Hynix has paid $185 million. Micron was the amnesty applicant in the

1  DRAM price-fixing investigation.  On April 20, 2007, it was reported that a sixth executive from

2  Samsung had pled guilty to conspiracy; as part of his plea agreement, the executive, Il Ung Kim,

3  will serve a 14 month sentence in a United States prison - "the longest imprisonment ever by a

4  foreign defendant charged with price fixing in the United States."  Technews, 4-20-07

5  (http://www.technologynewsdaily.com/node/6754).

6      68.    In October 2006, the DOJ sent subpoenas to approximately 23 companies,

7  including Samsung, Toshiba, Hynix, Renesas, and Micron, in connection with an investigation of

8  cartel activity in the SRAM industry.  A DOJ spokesperson was quoted as saying: "[t]he U.S.

9  Department of Justice's antitrust division is conducting an investigation regarding anti-

10  competitive practices against chief SRAM manufacturers."  DOJ's SRAM investigation concerns

11  anti-competitive conduct that was continuing at least as recently as 2005.

12      69.    The Department of Justice has now turned to the Flash Memory market.  In

13  September 2007, SanDisk, Toshiba America Electronic Components, Milpitas, and Samsung all

14  received DOJ subpoenas, and SanDisk CEO Eli Harari also received a grand jury subpoena.

15  These subpoenas were issued out of the U.S. District Court for the Northern District of

16  California.

17      70.    On September 14, 2007, SanDisk admitted the following in an SEC Form 8-K:

18
19  > This week the Company and its Chief Executive Officer received
20  > grand jury subpoenas issued from the United States District Court for
21  > the Northern District of California indicating a Department of Justice
22  > investigation into possible antitrust violations in the NAND flash
23  > memory industry. The Company also received a notice from the
24  > Canadian Competition Bureau that the Bureau has commenced an
25  > industry-wide investigation with respect to alleged anti-competitive
26  > activity regarding the conduct of companies engaged in the supply of
27  > NAND flash memory chips to Canada and requesting that the
28  > Company preserve any records relevant to such investigation.

25      71.    John Pecman, an assistant deputy commissioner in the criminal matters branch of

26  the Canadian Competition Bureau, has confirmed that the Bureau has "sent target letters to a

27  number of industry participants."

28

CLASS ACTION COMPLAINT         20

### G.    Anticompetitive Conduct

72.    Defendants, which includes their officers, directors, and employees, participated in anticompetitive behavior that harmed businesses and consumers and violated standards of ethical behavior by:

> a.    participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of Flash Memory in the United States;
>
> b.    agreeing, during those meetings and conversations, to charge prices at specified levels and otherwise to increase and maintain prices of Flash Memory sold in the United States;
>
> c.    issuing price announcements and quotations in accordance with the agreements reached; and selling Flash Memory to various customers in the United States at non-competitive prices.

## IX.    DEFENDANTS' CONCEALMENT OF THE CONSPIRACY

73.    Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives. Defendants and their co-conspirators publicly provided pretextual and false justifications regarding their price increases. Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before class action litigation was commenced.

74.    As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statues of limitations otherwise applicable to the allegations herein have been tolled.

**X.    VIOLATIONS ALLEGED**

**Count I**

**(Violation of Section 1 of the Sherman Act)**

75.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth above.

76.    Although the precise dates are not known to Plaintiff but are known to Defendants, Plaintiff alleges upon information and belief that from as early as January 1, 1999, and continuing at least through the present, Defendants and their co-conspirators entered into agreements, understandings, and a conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for Flash Memory in the United States. These agreements, understandings, and conspiracy violate §1 of the Sherman Act, 15 U.S.C. §1.

77.    Defendants' and their co-conspirators activities as alleged herein were within the flow of, were intended to, and did have a substantial effect on the foreign and interstate commerce of the United States.

78.    In entering into and conducting the conspiracy as agreed, Defendants and their co-conspirators committed the acts they agreed to commit, including those specifically set forth herein and additional acts and conduct in furtherance of the conspiracy, with the specific goals and intent:

    a.  of fixing, raising, and maintaining the price of Flash Memory;

    b.  of allocating amongst themselves markets for Flash Memory;

    c.  of submitting rigged bids in order to secure and carry out certain Flash Memory contracts; and

    d.  of allocating amongst themselves the production of Flash Memory.

79.    Among the effects of Defendants' and their co-conspirators acts have been:

    a.  Restraint, suppression, and/or elimination of price competition in the sale of Flash Memory in the Untied States;

b. The raising, fixing, maintenance, and stabilization of prices at artificially high and non-competitive levels for Flash Memory sold by Defendants and their co-conspirators in the United States; and

c. The denial to consumers of Flash Memory products of the benefits of competition.

80. Plaintiff and the members of the Class have been injured and will continue to be injured in their business and property by paying more for Flash Memory purchased directly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy.

81. Plaintiff and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## XI.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays:

A. That the Court determine that class treatment pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) is appropriate for the claims alleged herein under the Sherman Act;

B. That the Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the conduct, contract, trust, understanding, conspiracy, or combination alleged herein, or from entering into any other conduct, contract, trust, understanding, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

C. That the unlawful conduct, contract, conspiracy or combination alleged herein be adjudged and decreed to be a restraint of trade or commerce in violation of § 1 of the Sherman Act;

1    D.    That Plaintiff and the Class recover damages, as available under the law, and that

2  a judgment be entered in favor of Plaintiff and the Class jointly and severally against Defendants

3  in an amount to be trebled in accordance with applicable laws;

4    E.    That Plaintiff and members of the Class be awarded pre- and post judgment

5  interest from and after the date of service of the initial complaint in this action;

6    F.    That Plaintiff and members of the Class recover their costs of this suit, including

7  reasonable attorneys' fees as provided by law; and

8    G.    That Plaintiff and members of the Class receive such other and further relief as

9  the nature of the case may require or as the Court deems just, equitable, and proper.

10  **XII.    DEMAND FOR JURY TRIAL**

11    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

12  by jury for all issues so triable.

13                                              **WEXLER TORISEVA WALLACE LLP**

14  Dated: September 28, 2007

15                                              By:

16                                                    Mark J. Tamblyn

17                                              1610 Arden Way, Suite 290
                                                Sacramento, California 95815
18                                              Telephone: (916) 568-1100
                                                Facsimile: (916) 568-7890
19
20                                              Bernard Persky
                                                Hollis L. Salzman
21                                              Kellie Lerner
                                                **LABATON SUCHAROW LLP**
22                                              140 Broadway
                                                New York, NY 10005
23                                              Telephone: (212) 907-0700
                                                Facsimile: (212) 818-0477
24
25                                              Mark Shane
                                                **THE LAW OFFICES OF SHANE AND**
26                                              **WHITE LLC**
                                                1676 Route 27
27                                              Edison, NJ 08817
                                                Telephone: (732) 819-9100
28                                              Attorneys for Plaintiff and the Class