1  Mark J. Tamblyn (S.B.N. 179272)
   *Email: mjt@wtwlaw.com*
2  **Wexler Toriseva Wallace**
   1610 Arden Way, Suite 290
3  Sacramento, California 95815
   Phone: (916) 568-1100
4  Fax: (916) 568-7890

5  Bernard Persky (*Pro Hac Vice* Pending)
   *Email: Bpersky@labaton.com*
6  Hollis L. Salzman (*Pro Hac Vice* Pending)
   *Email: Hsalzman@labaton.com*
7  Kellie Lerner (*Pro Hac Vice* Pending)
   *Email: Klerner@labaton.com*
8  **Labaton Sucharow LLP**
   140 Broadway
9  New York, NY 10005
   Telephone: (212) 907-0700
10 Facsimile: (212) 818-0477

11 ***Attorneys for Plaintiff and the Class***
   ***(Additional Counsel on Signature Page)***
12

13                **UNITED STATES DISTRICT COURT**

14              **NORTHERN DISTRICT OF CALIFORNIA**

15 JEMS SOFTWARE AND CONSULTING,          **Case No.: 3:07-CV-05041-EMC**
   INC., on behalf of itself and all others
16 similarly situated,                      **PLAINTIFF JEMS SOFTWARE AND**
                                            **CONSULTING, INC.'S NOTICE OF**
17                          Plaintiff,      **CROSS-MOTION AND CROSS-MOTION**
                                            **TO APPOINT LABATON SUCHAROW**
18 v.                                       **LLP AS INTERIM LEAD COUNSEL OR,**
                                            **IN THE ALTERNATIVE, AS INTERIM**
19 LEXAR MEDIA, INC., *et al.*,             **CO-LEAD COUNSEL FOR DIRECT**
                                            **PURCHASER PLAINTIFFS; RESPONSE**
20                          Defendants.     **TO MOTIONS FOR APPOINTMENT OF**
                                            **INTERIM CO-LEAD COUNSEL FOR**
21                                          **DIRECT PURCHASER PLAINTIFFS;**
                                            **AND MEMORANDUM OF POINTS AND**
22                                          <u>**AUTHORITIES IN SUPPORT THEREOF**</u>
23

24                                          Date:        October 30, 2007
                                            Time:        1:00 p.m.
25                                          Courtroom:   3, Third Floor
26
                                            The Honorable Edward M. Chen
27

28

**NOTICE OF CROSS-MOTION AND CROSS-MOTION TO APPOINT
LABATON SUCHAROW LLP AS INTERIM LEAD COUNSEL
OR, IN THE ALTERNATIVE, AS INTERIM CO-LEAD COUNSEL
FOR DIRECT PURCHASER PLAINTIFFS; AND NOTICE OF RESPONSE TO
MOTIONS FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL
FOR DIRECT PURCHASER PLAINTIFFS**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 30, 2007, at 1:00 p.m., or as soon thereafter as the matter may be heard, before Hon. Saundra B. Armstrong at the United States District Court for the Northern District of California, 94612, Plaintiff Jems Software and Consulting, Inc. will and hereby does move this Court for an order appointing its attorneys, Labaton Sucharow LLP, as Interim Lead Counsel, or in the alternative, as Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs.

This motion is brought pursuant to Rule 23(g) of the Federal Rules of Civil Procedure. The grounds for this motion are that this complex case will benefit from the appointment of interim lead counsel and that Labaton Sucharow LLP is the most qualified for this position because, among other reasons, it is the only petitioning firm with an undivided loyalty to the putative Class. This motion is based on this Notice of Cross-Motion and Cross-Motion To Appoint Labaton Sucharow LLP As Interim Lead Counsel Or, In The Alternative, As Interim Co-Lead Counsel For Direct Purchaser Plaintiffs; Response to Motions To Appoint Interim Co-Lead Counsel For Direct Purchaser Plaintiffs; And Memorandum Of Points And Authorities In Support Thereof; the Declaration of Hollis L. Salzman In Support of Plaintiff Jems Software and Consulting, Inc.'s Notice of Cross-Motion And Cross-Motion To Appoint Labaton Sucharow LLP As Interim Lead Counsel Or, In The Alternative, As Interim Co-Lead Counsel For Direct Purchaser Plaintiffs; Response to Motions To Appoint Interim Co-Lead Counsel For Direct Purchaser Plaintiffs; the [Proposed] Order Appointing Labaton Sucharow LLP As [Interim Lead Counsel] [Interim Co-Lead Counsel] For Direct Purchaser Plaintiffs; the record in this matter; and any arguments of counsel.

1 | Dated: October 9, 2007

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**Wexler Toriseva Wallace**

By:   /s/ Mark J. Tamblyn

Mark J. Tamblyn (S.B.N. 179272)
1610 Arden Way, Suite 290
Sacramento, CA 95815
Phone: (916) 568-1100
Fax: (916) 568-7890

Bernard Persky
Hollis L. Salzman
Kellie Lerner
**Labaton Sucharow LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

Mark Shane
**The Law Offices of Shane and White LLC**
1676 Route 27
Edison, NJ 08817
Telephone: (732) 819-9100

Attorneys for Plaintiff and the Class

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
CROSS-MOTION TO APPOINT LABATON SUCHAROW LLP AS
INTERIM LEAD COUNSEL OR, IN THE ALTERNATIVE, AS INTERIM CO-LEAD
COUNSEL FOR DIRECT PURCHASER PLAINTIFFS AND RESPONSE TO
MOTIONS FOR APPOINTMENT OF INTERIM CO-LEAD COUNSEL**

2

3

4

## I. INTRODUCTION

5      Plaintiff Jems Software and Consulting, Inc. (the "Jems Plaintiff") by its undersigned

6   counsel, respectfully moves the Court, pursuant to Rule 23(g)(2)(A) of the Federal Rules of Civil

7   Procedure, to appoint Labaton Sucharow LLP ("Labaton Sucharow") as Interim Lead Counsel

8   or, in the alternative, as Interim Co-Lead Counsel for the Direct Purchaser Actions[1] that have

9   been deemed related by this Court.

10      The Jems Plaintiff submits that the proposed appointment of Labaton Sucharow is in the

11   best interests of the Class. Labaton Sucharow is a highly experienced firm with a proven record

12   of success and leadership in managing, litigating and prevailing in complex antitrust class

13   actions. Labaton Sucharow has previously obtained several landmark antitrust and class action

14   recoveries. Moreover, Labaton Sucharow does not serve in a leadership capacity in other class

15   actions against the defendants in the Direct Purchaser Actions. Thus, it is uniquely situated to

16   provide undivided loyalty to the proposed Direct Purchaser Class.

17      In contrast, of the other known movants for lead counsel, all but one firm[2] already serves

18   in a leadership capacity in one or more class actions against certain of the same defendants in the

19   Direct Purchaser Actions. Indeed, the existing leadership roles of these movants may

20   compromise their loyalties and duties to the proposed Class in the Direct Purchaser Actions. The

21   appointment of Labaton Sucharow, independent class counsel, to vigorously prosecute the Direct

22   Purchaser Actions solely on behalf of the Class is essential under Rule 23(g). Accordingly,

23   Plaintiff's motion should be granted, and the competing motions should all be denied.

24   _____

25      [1] The "Direct Purchaser Actions" refers to Case No. 07-05041 and the direct purchaser cases
     this Court has deemed related to Case No. 07-00086-SBA.

26

27      [2] The only known movant that does not serve in a leadership capacity in another class action
     against the same defendants is Reinhardt, Wendorf & Blanchfield. However, this firm
     principally supports the appointment of Saveri & Saveri, Inc and Pearson, Simon, Soter,

28   Warshaw & Penny LLP as Interim Co-Lead Counsel.

1       In the alternative, this Court should appoint Labaton Sucharow as Interim Co-Lead

2    Counsel as part of any larger lead counsel structure selected by the Court.  This approach will

3    also serve to negate the above-referenced issue by ensuring that counsel with undivided loyalty

4    to the Class is present during the course of any settlement or other negotiations during the

5    prosecution of the case, where the appearance of a potential conflict of interest is most likely to

6    arise.  Moreover, Labaton Sucharow will, if appointed, work inclusively and co-operatively with

7    attorneys from the other class counsel movants in the prosecution of the Direct Purchaser

8    Actions.  Such a larger structure is also justified by additional factors, including the large number

9    of defendants (23), the international discovery burden, and the many complex issues here.  *See,*

10   *e.g., In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 515 (S.D.N.Y. 1996)

11   (appointing four co-lead counsel in a multiple defendant case).  Finally, the majority of known

12   movants for lead counsel are based in Northern California, while the defendants are located

13   around the globe.  Appointing Labaton Sucharow, a New York City-based firm, as part of an

14   Interim Co-Lead structure will, therefore, promote geographic balance within the leadership of

15   the Direct Purchaser Actions.  *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139

16   (C.D. Cal. 1999).

17        **II.  NATURE OF THE DIRECT PURCHASER ACTIONS**

18      The Jems Plaintiff brings this lawsuit as a Class Action on behalf of individuals and

19   entities who purchased Flash Memory directly from Defendants, their subsidiaries, agents, or co-

20   conspirators during the period from at least January 1, 1999 through the present ("Class Period").

21   As used herein, the term "Flash Memory" means all types of Flash Memory sold during the

22   Class Period, including AND, Not AND ("NAND"), and Not OR ("NOR") technologies, but

23   excludes all types of static random access memory ("SRAM") or dynamic random access

24   memory ("DRAM") sold during the Class Period.

25        **III.  PROCEDURAL BACKGROUND**

26      Numerous related class actions have been filed alleging price fixing of Flash Memory, a

27   form of electronic memory that can be reprogrammed and erased.  This type of memory is used

28   in cellular phones, digital audio players, personal computers, digital phones, home gaming

1  consoles and Global Positioning Systems.  Defendants are manufactures of Flash Memory in the

2  United States and around the world.

3      All of the known direct purchaser actions are currently pending in the Northern District

4  of California.  On September 17, 2007, Plaintiff A Computer Place, Inc. ("Computer Place

5  Plaintiff") filed a Motion to Appoint Saveri & Saveri, Inc. and Pearson, Simon, Soter, Warshaw

6  & Penny LLP as Interim Class Counsel for Direct Purchaser Plaintiffs.  On September 25, 2007,

7  Plaintiff Richard Thal filed a Cross-Motion for Appointment of Lieff, Cabraser, Heiman &

8  Bernstein, LLP as Interim Lead or Co-Lead Counsel for Direct Purchasers.  Plaintiff  Laura

9  Young responded on September 26, 2007 with a motion supporting the Computer Place

10  Plaintiff's proposed structure, or in the alternative, the appointment of Reinhardt, Wendorf &

11  Blanchfield as Interim Co-Lead Counsel with Saveri & Saveri, Inc. and Pearson, Simon, Soter,

12  Warshaw & Penny LLP.  Similarly, Plaintiff Westell Technologies, Inc. filed a motion

13  supporting Computer Place, but added that Freed Kanner London & Millen LLC should be

14  appointed a third Co-Lead should the Court determine that a two-firm Co-Lead structure is

15  insufficient.  The Jems Plaintiff files this motion to appoint Labaton Sucharow LLP as Interim

16  Lead or Co-Lead Counsel.  For the reasons stated herein, the appointment of Labaton Sucharow

17  will best serve to protect the interests of the proposed Class.

18                    IV.  **ARGUMENT**

19      "In multi-party, multi-case litigation, the district court's success is largely dependent

20  upon its ability to uncomplicate matters."  *In re Recticel Foam Corp.*, 859 F.2d 1000, 1004 (1st

21  Cir. 1988).  Thus, the "multiplicity of suits requires that the district court be allowed to combine

22  procedures, appoint lead counsel, recognize steering committees of lawyers, limit and manage

23  discovery, etc. to minimize expense to all litigants and to provide judicial efficiency."  *In re

24  Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992); *see

25  also In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644 (E.D. Pa. 2003); MANUAL FOR

26  COMPLEX LITIGATION (Fourth) § 10.22 (2004) (the "*Manual*").

27

28

### A.  Appointment Of Interim Lead Counsel Is Necessary To Achieve Efficiency And Economy In This Litigation.

Appointment of Interim Lead Counsel is critical to advancing this litigation and proceeding with discovery in an organized and efficient manner.  The appointment of Interim Lead Counsel is consistent with the *Manual's* recommended organizational structure and ultimate goal of achieving "efficiency and economy" in the litigation.  *See Manual* § 10.221. The proposed Interim Lead Counsel, Labaton Sucharow, clearly meets all criteria for Class Counsel required by Fed. R. Civ. P. 23(g).  Labaton Sucharow will fairly and adequately represent the interests of the class.  *See* Fed. R. Civ. P. 23(g)(1)(B).

Rule 23(g)(1)(C) sets out those factors that must be considered in connection with the appointment of class counsel.  In appointing class counsel, the court must consider:

- the work counsel has done in identifying or investigating potential claims in the action,

- counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,

- counsel's knowledge of the applicable law, and

- the resources counsel will commit to representing the class.

In addition, the Court may "*consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.*" (emphasis added).  The totality of these factors militates in favor of appointing Labaton Sucharow as Interim Lead or Co-Lead Counsel for the Direct Purchaser Class.

### 1.  Labaton Sucharow Will Serve The Class With Undivided Loyalty.

The Computer Place Plaintiff and cross-movants propose Interim Lead Counsel who may be compromised in their ability to "fairly and adequately represent the interests of the class," as required by Rule 23(g).  Specifically, the appointment of these firms raises potential questions of undivided loyalty to the Class in this case based on their current prosecution of other class actions against many of the same defendants in this case.  For instance, the following firms also serve on the Steering Committee or as Co-Lead counsel in similar class actions involving many of the same defendants in the Direct Purchaser Actions:

1

2

3

4

5

6

7

8

9

10

11

- • Saveri & Saveri, Inc., Co-Lead Counsel in *In re Dynamic Random Access Memory Antitrust Litigation* ("*DRAM* Litigation), MDL No. M:07-cv-01827 (SI) (N.D. Cal); Steering Committee in *In re Static Random Access Memory Antitrust Litigation* ("*SRAM* Litigation"), M:07-cv-01819-CW;

- • Pearson, Simon, Soter, Warshaw & Penny, LLP, Interim Co-Lead Counsel in *In Re TFT-LCD (Flat Panel) Antitrust Litigation* ("*LCD* Litigation"), MDL No. M:07-cv-01827 (SI) (N.D. Cal); Co-Chair of Discovery in *DRAM* Litigation;

- • Freed Kanner London & Millen LLC, Steering Committee in *SRAM* Litigation; Co-Chair of Discovery in *DRAM* Litigation; and

- • Lieff Cabraser Heimann & Bernstein, LLP, Interim Co-Lead Counsel in *LCD* Litigation; Steering Committee in *SRAM* Litigation.

12    Should the Court appoint these firms to a leadership position in this case, they would be

13 placed in a position of representing different classes of plaintiffs with competing claims against

14 the same overlapping defendants. Indeed, virtually all of the defendants in the Direct Purchaser

15 Actions are also defendants in one or more other class actions involving price-fixing allegations

16 concerning computer-related products.

17    This representation of separate classes against the same defendant creates the possibility

18 of two distinct potential conflicts of interest. First, should any of the repeat defendants have a

19 finite pool of assets from which a recovery is being sought, each class would be vying to recover

20 from the same potentially limited fund. Second, with regard to settlement negotiations, class

21 counsel may favor the interests of one class at the expense of another to obtain a global

22 settlement and release from a single defendant without adequate regard to the relative strengths

23 or weaknesses of the claims of each class.[3]  While none of the proposed firms for interim lead

24

25    [3] In *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581 (W.D. Tex. 2002), the court further

26 expounded upon the potential for a conflict of interest under these circumstances in the context of settlement negotiations. It explained:

27    [T]he interests of the counsel may conflict with the members

28 of one or more of the classes. The inability of counsel to discuss settlement offers in the other cases and the potential influence one

---

1  counsel have engaged, or would intentionally engage in unethical conduct, the potential for

2  either of these conflicts, and the appearance of such possible conflicts, renders their current

3  proposals for appointment as class counsel unsuitable and not in the best interests of the Class.

4       The above-referenced potential conflicts inherent in bringing multiple class actions

5  against the same defendants are well known. 7A Charles A. Wright & Arthur R. Miller, *Federal*

6  *Practice and Procedure* §1769.1 (2d ed. 1986) ("A conflict of interest . . . may be present,

7  however, if class counsel is involved in multiple lawsuits for the named representatives or

8  against the same defendants"). This concern has prompted several courts, including this Court,

9  to hold proposed interim lead class counsel inadequate because of its representation of separate

10 classes against the same defendant.

11      The court in *In re Cardinal Health, Inc. ERISA Litigation* squarely addressed this issue.

12 225 F.R.D. 552 (S.D. Ohio 2005). In *Cardinal Health*, the court considered competing motions

13 for the appointment of lead counsel in an ERISA action. One of the firms that moved for lead

14 counsel also represented a class in a separate action against the same defendant. *Id.* Several

15 plaintiffs argued that this firm could not serve as lead counsel because its dual representation of

16 two separate classes against the same defendant "will create a situation in which one group of

17 plaintiffs is inevitably favored." The court agreed, holding that counsel could not represent

18 separate classes of plaintiffs against the same defendant. *Id.* at 557. Specifically, the court found

19 that "[i]f the amount sought by each proposed class could exceed the total assets of the

20 Defendants, then 'competing claims may impair counsel's ability to vigorously pursue the

21 interest of both classes.'" *Id.* (internal citations omitted); *cf. Dietrich v. Bauer*, 192 F.R.D. 119,

22 126 (S.D.N.Y. 2000) (allowing counsel to represent two overlapping classes because the actions

23 were filed against different defendants).

24

25 *( . . . continued)*

26      case may have on a decision to settle the other are only part of the
     problem. Counsel are also limited in the information they can or

27      will have the incentive to divulge because of their representation of
     different parties.

28 *Id.* at 590.

NOTICE OF CROSS-MOTION AND CROSS-MOTION TO APPOINT LABATON SUCHAROW LLP AS
INTERIM LEAD COUNSEL OR, IN THE ALTERNATIVE, AS CO-LEAD COUNSEL FOR DIRECT
PURCHASER PLAINTIFFS [Case No. 3:07-CV-05041-EMC]

8

1          This Court has come to the same conclusion. *See Strigliabotti v. Franklin Res., Inc.*, No.

2    C-04-0083, 2006 WL 2792417, at \*4 (N.D. Cal. Sept. 27, 2006). In *Strigliabotti*, the Court

3    specifically considered the adequacy of class counsel who brought both class and derivative

4    actions against the same defendant. The Court held that the simultaneous representation of two

5    interested groups of claimants against the same defendant posed a conflict of interest. In so

6    holding, the Court explained that "the class and the derivative actions would be competing for

7    the same pool of money, thus creating a structural incentive to favor one group over the other."

8    *Id.; see also Kuper v. Quantum Chem. Corp.*, 145 F.R.D. 80, 83 (S.D. Ohio 1992) ("The

9    rationale for those holdings- that class counsel should not be subject to divided loyalties- applies

10   equally to the competing interests of separate classes vying for relief from the same limited

11   source.").

12         Indeed, even the mere appearance of a potential conflict is sufficient reason to reject a

13   proposed leadership structure that involves overlapping classes. *See Kayes v. Pacific Lumber*

14   *Co.*, Nos. C-89-3500, C-91-1812, 1993 U.S. Dist. LEXIS 21090, at \*26 (N.D. Cal. April 14,

15   1993) (denying class certification because of potential conflict of interest and finding "[t]he

16   responsibility of class counsel to absent class members whose control over their attorneys is

17   limited does not permit even the appearance of divided loyalties of counsel") (Armstrong, J.)

18   (internal citation omitted); *ABA Code of Professional Responsibility*, DR 5-105 and EC 5-14

19   (prohibiting counsel from representing different plaintiffs with conflicting claims).

20         The Direct Purchaser Class should not be burdened with the complications that may

21   result from either actual conflicts or potential conflicts inherent in the proposed leadership

22   structure of the movants. Instead, the Jems Plaintiff respectfully submits that Labaton Sucharow,

23   a firm that is not in the leadership in any of the other pending groups of class actions against

24   these same defendants, should be appointed Interim Lead Counsel, so that the interests of the

25   proposed Direct Purchaser Class are best protected.

26

27

28

1

2

### 2.  Labaton Sucharow Is The Best Choice To Promote The Efficient Prosecution Of The Direct Purchaser Actions

3     If appropriate structural safeguards are not put in place now, the Class may be exposed to

4  adequacy of representation challenges at later stages of the litigation, such as class certification

5  or settlement approval.  The Court has the opportunity at this time to address this manifest

6  inefficiency by appointing Interim Lead Counsel that will best represent the Class throughout the

7  entire litigation.  *See, e.g., In re Williams Co. ERISA Litig.*, No. 02-CV-153, 2002 U.S. Dist.

8  LEXIS 27691 (N.D. Okla. Oct. 28, 2002) (considering class certification requirements when

9  appointing lead counsel).

10     For instance, in *Kuper*, defendants challenged plaintiffs' motion for class certification by

11  arguing that class counsel was inadequate due to its concurrent representation of bondholders

12  and stock holders against the same defendants.  145 F.R.D. at 83.  In denying class certification,

13  the court found that the question of whether counsel was qualified to represent the class did not

14  hinge on whether an actual conflict exists, but rather, whether a conflict could develop in the

15  future.  *Id.* ("the finding that no direct conflict currently exists is not dispositive of whether

16  Plaintiffs' counsel is qualified to represent the class"); *Kayes v. Pacific Lumber Co.*, 51 F.3d

17  1449, 1465 (9th Cir. 1995) ("The 'appearance' of divided loyalties refers to differing and

18  potentially conflicting interests and is not limited to instances manifesting such conflict.").  The

19  court, therefore, held that counsel's representation of competing classes would "impair" its

20  "ability to vigorously pursue the interests of both classes." *Id.*; *see also Strigliabotti,* 2006 WL

21  2792417, at *4 (denying class certification because of overlapping representation, which would

22  create a "structural incentive to favor one group over the other").

23     Similarly, in *Jackshaw Pontiac, Inc. v. Cleveland Press Publishing Co.*, 102 F.R.D. 183

24  (N.D. Ohio 1984), the court found that the representation of separate classes rendered counsel

25  inadequate because both classes were seeking to recover from the same pool of finite assets of

26  the defendant.  *Id.* at 192.  *See also Krim*, 210 F.R.D. at 589 (holding that proposed lead counsel

27  were unable to satisfy Rule 23's adequacy requirement because they were involved in multiple

28  lawsuits against the same defendant representing different classes of shareholders, explaining

1    that "[c]lass counsel must act with unwavering and complete loyalty to the class members they

2    represent."); *Sullivan v. Chase Inv. Servs. of Boston, Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978)

3    (finding a conflict based on counsel's dual representation and attempt to recover from the same

4    limited pool of assets, concluding that "[t]he responsibility of class counsel to absent class

5    members whose control over their attorneys is limited does not permit even the appearance of

6    divided loyalties of counsel").

7    These potential conflict of interest concerns do not end at class certification. Similar

8    arguments may be made by objectors to any proposed class settlement unless structural

9    protections are put in place now. For example, the parties were confronted with this issue in *In*

10   *re Relafen Antitrust Litigation*, 231 F.R.D. 52 (D. Mass. 2005). There, a proposed global

11   settlement was reached that encompassed various groupings of state law claims. Objectors

12   opposed the proposed settlement, arguing that "class counsel 'was too lazy (or too selfish)' to

13   ensure that residents of different states were fairly represented." *Id.* at 76 (internal citations

14   omitted). The court disagreed because of the structural safeguards that had been put in place,

15   which included independent counsel for each group of states. *Id.*; *see also In re Warfarin*

16   *Sodium Antitrust Litig.*, 212 F.R.D. 231, 250 (D. Del. 2002) ( finding that the existence of

17   separate consumer and third-party payor counsel provides adequate "structural protections to

18   assure that differently situated plaintiffs negotiate for their own unique interests."); *Nichols v.*

19   *Smithkline Beecham Corp.*, No. Civ. A 00-6222, 2005 WL950616 (E.D. Pa. April 22, 2005)

20   (approving final settlement agreement because the interests of third-party payors and consumers

21   were represented by separate counsel); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205

22   F.R.D. 369, 389-94 (D.D.C. 2002). Given the breadth of possible objections that may arise in

23   the context of global settlements for classes or subclasses, the need for independent counsel to

24   negotiate the settlements of completely separate classes against overlapping defendants is even

25   more critical.

26   The Class in this case may face the same preventable hurdles because of the multiple

27   representation of certain of the proposed Interim Lead Counsel. This challenge would be

28   avoided entirely by appointing Labaton Sucharow as Interim Lead Counsel. Alternatively,

1    should the Court determine that one or several of the other movants may appropriately serve as

2    Interim Lead Counsel, the Jems Plaintiff respectfully requests that Labaton Sucharow be

3    appointed as additional Co-Lead Counsel to ensure that at least one firm with undivided loyalties

4    to the Class oversees the litigation.  This appointment is even more critical for purposes of

5    settlement negotiations, where it is particularly necessary to involve wholly independent counsel

6    to represent the Class, which is competing with the other classes to recover from the same pool

7    of assets.

8                          **3.    Labaton Sucharow Has The Experience, Knowledge, Resources**
                              **and Other Qualifications To Serve As Interim Lead Counsel**

9

10          Labaton Sucharow has vigorously litigated and settled numerous antitrust class actions.

11    *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002), *aff'd*, 391

12    F.3d 516 (3d Cir. 2004) (Judge Sue Robinson, when approving $44.5 million settlement, noted

13    that "class counsel are well-qualified to litigate this type of complex class action, and they

14    showed their effectiveness in the case at bar through the favorable cash settlement they were able

15    to obtain.").

16          Labaton Sucharow has been at the forefront in obtaining substantial recoveries on behalf

17    of classes of direct purchasers in antitrust litigations around the country.  For instance, Labaton

18    Sucharow recently obtained $47 million in settlements on behalf of a direct purchaser class of

19    equity options purchasers injured by an alleged scheme to restrict the exchange listing of equity

20    options.  *In re Stock Exchs. Options Trading Antitrust Litig.*, MDL No. 1283, C.A. No. 1:99-cv-

21    00962 (RCC) (S.D.N.Y.); *see also In re Maltol Antitrust Litig.*, C.A. No. 1:99-cv-05931 (TPG)

22    (S.D.N.Y.) (obtaining as Co-Lead Counsel $18 million in settlements of price fixing and market

23    allocation claims against Pfizer, Inc. and certain foreign defendants on behalf of businesses that

24    directly purchased the food additives maltol and sodium erythorbate).

25          Labaton Sucharow is also responsible for substantial recoveries on behalf of indirect

26    purchasers in prescription drug class actions.  In 2004, Labaton served as Co-Lead counsel in *In*

27    *re Buspirone Antitrust Litigation*, MDL No. 1413 (S.D.N.Y.), and obtained final approval of a

28    $90 million settlement with defendants on behalf of consumers and their health insurance

1  providers.  The settlement allocated funds to consumers in many states and third-party payors

2  nationwide, and settled actions alleging anticompetitive conduct by improperly extending the

3  monopoly in the market for buspirone hydrochloride, an anti-anxiety drug sold under the brand

4  name BuSpar.  In approving the settlement, Judge John G. Koeltl commended lead counsel,

5  including Labaton Sucharow, as follows: "Let me say that the lawyers in this case have done a

6  stupendous job.  They really have."

7      Labaton Sucharow, as Co-Lead Counsel, represented consumers and third-party payors in

8  litigation against Mylan Laboratories, Inc. and others regarding alleged price increases for

9  generic versions of certain prescription drugs. *See In re Lorazepam & Clorazepate Antitrust*

10 *Litig.*, No. MDL 1290 (TFH), 2003 WL 22037741 (D.D.C. June 16, 2003).  These actions were

11 jointly litigated with the Federal Trade Commission and various state Attorneys General.  The

12 third-party payor and consumer actions resulted in a total of $135.4 million in settlements.

13     Labaton Sucharow has also obtained extraordinary recoveries in other complex class

14 actions.  For instance, as Co-Lead Counsel, Labaton Sucharow obtained a total of $101 million

15 in settlements on behalf of a class of NYMEX natural gas futures traders injured by defendant

16 energy companies' alleged manipulation of published price indices.  This is the second-largest

17 class action commodities manipulation recovery on record.  *In re Natural Gas Commodity*

18 *Litigation*, C.A. No. 1:03-cv-06186 (VM) (S.D.N.Y.).

19     The following represent a sampling of the recent appointments of Labaton Sucharow as

20 Lead or Co-Lead Counsel in major pending antitrust class actions:

21     • *In re Air Cargo Shipping Services Antitrust Litigation*, C.A.
       No. 1:06-MD-01775 (CBA) (EDNY), Labaton Sucharow
22     was appointed co-lead counsel for plaintiffs and a proposed
       class of businesses and consumers who allege that the
23     defendant airlines participated in a global conspiracy to fix
       shipment surcharges in the $50 billion airfreight shipping
24     services industry and to allocate customers, routes and
       territories.
25
       • *In re Abbott Laboratories Antitrust Litigation*,  C.A. NO.
26     4:04-CV-01511-CW (N.D. Cal), Labaton Sucharow has
       been prosecuting the case as co-lead counsel since 2004,
27     shortly after Abbott raised the price of a key HIV drug,
       Norvir, by 400%.
28

1
2
3
4
     • *In re Foundry Resins Antitrust Litigation*, C.A. NO. 2:04-MD-01638-GLF-MRA (S.D. Ohio), Labaton Sucharow was appointed co-lead counsel for a plaintiff class of direct purchasers who allege that defendant suppliers have illegally conspired to fix prices, rig bids and allocate customers in the market for foundry resins.

5 Attached as Exhibit A to the Declaration of Hollis L. Salzman in Support of Motion to Appoint

6 Interim Lead Counsel Or, In The Alternative, As Interim Co-Lead Counsel for Direct Purchaser

7 Plaintiffs, is the firm resume of Labaton Sucharow.

8      Labaton Sucharow also has committed the resources necessary to prosecute the Direct

9 Purchaser Actions. For example, even though the Jems Plaintiff only recently filed its

10 complaint, Labaton Sucharow has been investigating the case since early 2007. Through this

11 private investigation, Labaton Sucharow has amassed a wealth of confidential materials that will

12 assist in the prosecution of the litigation. As a matter of course, Labaton Sucharow has advanced

13 expenses for complex class actions spanning years, in actions in which they have obtained

14 landmark recoveries. As such, the requirements of Rule 23(g) are satisfied.

15
16 **4.      Alternatively, Labaton Sucharow Should Be Appointed Interim Co-Lead Counsel**

17      Alternatively, the Jems Plaintiff requests the Court to appoint Labaton Sucharow as

18 Interim Co-Lead Counsel. As discussed above, the inclusion of Labaton Sucharow in any co-

19 lead counsel structure would ensure that the Class is independently and fairly represented in the

20 event an actual conflict arises based on the other movants' multiple representation of competing

21 classes against the same defendants. Moreover, this is a proposed nationwide class action with

22 defendants located all over the country (and the globe), including New York. A number of

23 parties, as well as defense counsel, will be located in and around New York. The majority of

24 movants, however, are located in Northern California or the Midwest. Indeed, not one other firm

25 currently proposed for Lead or Co-Lead Counsel is located in New York. If the Court were to

26 appoint an Interim Co-Lead structure, the Jems Plaintiff proposes that New York City-based

27 Labaton Sucharow be included to promote geographic balance. *See Takeda*, 67 F. Supp. 2d at

28

---

NOTICE OF CROSS-MOTION AND CROSS-MOTION TO APPOINT LABATON SUCHAROW LLP AS INTERIM LEAD COUNSEL OR, IN THE ALTERNATIVE, AS CO-LEAD COUNSEL FOR DIRECT PURCHASER PLAINTIFFS [Case No. 3:07-CV-05041-EMC]

14

1  1139 ("the geographic diversity of the three co-Lead Counsel should add to, rather than detract

2  from, the efficient handling of this case.").

3  ## V.  CONCLUSION

4      For the reasons set forth herein, and in order to provide for the orderly and efficient

5  conduct of the related actions, the Jems Plaintiff respectfully requests that the Court appoint

6  Labaton Sucharow as Interim Lead Counsel.

7      Alternatively, if this Court determines to appoint any larger lead counsel structure, then

8  the Labaton Sucharow Firm should be appointed Co-Lead counsel as part thereof.

9  Dated:  October 9, 2007

10                                       Respectfully submitted,

11                                        **Wexler Toriseva Wallace**

12                                      By:  ___/s/ Mark J. Tamblyn_____

13                                      Mark J. Tamblyn (179272)

14                                      1610 Arden Way, Suite 290
                                   Sacramento, CA 95815

15                                    Phone: (916) 568-1100
                                   Fax: (916) 568-7890

16

17                                    Bernard Persky
                                   Hollis L. Salzman

18                                    Kellie Lerner
                                   **Labaton Sucharow LLP**

19                                    140 Broadway
                                   New York, NY 10005

20                                    Telephone: (212) 907-0700
                                   Facsimile: (212) 818-0477

21

22                                    Mark Shane
                                   **The Law Offices of Shane and White LLC**

23                                    1676 Route 27
                                   Edison, NJ 08817

24                                    Telephone: (732) 819-9100

25                                    Attorneys for Plaintiff and the Class

26

27

28

NOTICE OF CROSS-MOTION AND CROSS-MOTION TO APPOINT LABATON SUCHAROW LLP AS
INTERIM LEAD COUNSEL OR, IN THE ALTERNATIVE, AS CO-LEAD COUNSEL FOR DIRECT
PURCHASER PLAINTIFFS [Case No. 3:07-CV-05041-EMC]    15

682880 v2
[10/8/2007 14:57]