Bernard Persky (*Pro Hac Vice* Pending)
*Email: Bpersky@labaton.com*
Hollis L. Salzman (*Pro Hac Vice* Pending)
*Email: Hsalzman@labaton.com*
Kellie Lerner (*Pro Hac Vice* Pending)
*Email: Klerner@labaton.com*
**Labaton Sucharow LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Attorneys for Plaintiff and the Class*
*(Additional Counsel on Signature Page)*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEMS SOFTWARE AND CONSULTING, INC., on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LEXAR MEDIA, INC., *et al.*, <br><br> Defendants. | Case No.: 3:07-CV-05041-EMC <br><br> **DECLARATION OF HOLLIS L. SALZMAN IN SUPPORT OF NOTICE OF CROSS-MOTION AND CROSS-MOTION TO APPOINT LABATON SUCHAROW LLP AS INTERIM LEAD COUNSEL OR, IN THE ALTERNATIVE, INTERIM CO-LEAD COUNSEL FOR DIRECT PURCHASER PLAINTIFFS** |

1    I, Hollis L. Salzman, declare as follows:

2    1.    I am an attorney duly licensed to practice law in New York, New Jersey and

3    Florida and a Partner in the law firm of Labaton Sucharow LLP. I have submitted papers to be

4    admitted *pro hac vice* on behalf of Plaintiff Jems Software and Consulting, Inc.

5    2.    I submit this declaration based upon my own knowledge. If called upon to testify,

6    I could and would testify competently to the truth of the matters stated herein.

7    3.    Attached hereto as Exhibit A is a true and correct copy of Labaton Sucharow's

8    firm resume and Antitrust Practice Group attorney biographies.

9    4.    As described in the Firm's resume, Labaton Sucharow has long been on the front

10    lines representing businesses, consumers, health insurers, and other third-party payors in Class

11    Actions to combat price-fixing schemes, monopolization, and other anticompetitive, unfair and

12    deceptive business practices.

13    5.    Labaton Sucharow's pioneering antitrust litigations have included numerous

14    industries- from prescription drugs to food additives, raw materials, chemicals, paper, resin,

15    copper, natural gas and crude oil futures, vitamins, and food products to employees' salaries,

16    shipping costs and equity options.

17    6.    Labaton Sucharow's continuing record of successful class recoveries for victims

18    of anticompetitive conduct speaks for itself. As Co-Lead or Lead Counsel, Labaton Sucharow

19    has achieved many outstanding results – highlights include:

20    •    In 2006-2007, we obtained approval of settlements totaling almost $101
       million on behalf of a class of NYMEX Natural Gas futures traders, the
21       second-largest class action commodities manipulation recovery on record.

22    •    In 2005-2006, we obtained approvals of settlements totaling $47 million
       on behalf of a class of equity options purchasers injured by an alleged
23       scheme to restrict and exchange listing of equity options.

24
      •    In 2004, we obtained approval of a $90 million settlement on behalf of
25       union health and welfare funds and insurers nationwide, and consumers in
       certain states, to settle claims of monopolistic and anticompetitive conduct
26       concerning BuSpar, an anti-anxiety drug.

27
      •    In 2003, we obtained settlements totaling $135.4 million on behalf of
28       consumers and third-party payors nationwide against Mylan Laboratories,

1    Inc., for unlawful and anticompetitive price increases for generic versions
2    of the anti-anxiety drugs lorazepam and clorazepate.

3    •    In 2002, we obtained more than $18 million in settlements with Pfizer and
        Fujusawa on behalf of direct purchasers of the food additives maltol and
4        sodium erythorbate.

5    •    In 2001, we obtained approval of a $44.5 million settlement with DuPont
        Pharmaceuticals Company on behalf of consumers, union health and
6        welfare funds, and private insurers who purchased Coumadin, a blood
7        thinning drug.

8    •    In 2000, we obtained settlements totaling almost $90 million in class
        actions pending in California state court against Sumitomo Corporation
9        and others, on behalf of business purchasers of copper products harmed by
10       unlawfully inflated copper prices.

11       7.    In granting final approvals of the almost $65 million multi-state cash settlements

12   in the Brand Name Prescription Drug cases, various courts commented favorably upon the

13   expertise and experience of Labaton Sucharow's Antitrust Practice Group.  For example,

14   •    Judge Myron Greenberg, in approving the Minnesota portion of the
        settlement, noted: "I think the lawyering in this case is most
15       commendable . . . [Counsel] have accorded themselves in a manner that
        allows us to be proud of the profession."
16

17   •    Similarly, Judge Moria Krueger, in approving Wisconsin's portion of the
        settlement, complimented the Firm and noted: "This Court has been
18       helped along every step of the way by some outstanding lawyering . . .
        [Y]ou can hardly say that there has been anything but five star attorneys
19       involved in the case."

20       8.    In approving the $90 million settlement on behalf of the class in *In re Buspirone*

21   *Antitrust Litigation*, Judge John Koeltl, of the United States District Court for the Southern

22   District of New York, commented on the Firm's performance as Co-Lead Counsel, and stated:

23   •    "Let me say that the lawyers in this case have done a stupendous job.
        They really have."
24

25       9.    Labaton Sucharow is currently actively engaged in the prosecution of major

26   antitrust class actions pending throughout the United States.  It is presently Co-Lead Counsel in

27   many antitrust cases, including *In re Air Cargo Shipping Services Antitrust Litigation (E.D.N.Y.)*,

28   *In re Foundry Resins Antitrust Litigation M.D.L. 1638 (S.D. Ohio), In re Norvir Antitrust*

1  *Litigation (N.D. Ca.), In re Parcel Tanker Shipping Services Antitrust Litigation (D. Ct.), In re*

2  *Tricor Antitrust Litigation (D. Del.), and In re OxyContin Antitrust Litigation (S.D.N.Y.).*

3         10.     The Firm is also on the Executive Committee or actively involved in other

4  pending major antitrust litigations, including *In re Payment Card Antitrust Litigation (E.D.N.Y.),*

5  *In re New Motor Vehicles Canadian Export Antitrust Litigation (D. Me.), In re Funeral*

6  *Consumers Antitrust Litigation (S.D. Tex), In re Hydrogen Peroxide Antitrust Litigation (E.D.*

7  *Pa.), and In Re Pineapple Antitrust Litigation (S.D.N.Y.).*

8         11.     I declare under penalty of perjury under the laws of the United States that the

9  foregoing is true and correct.

10  DATED: October 9, 2007                          Respectfully submitted,

11                                                  By:

12

13                                                  **Labaton Sucharow LLP**
                                                    140 Broadway
14                                                  New York, NY 10005
                                                    Telephone: (212) 907-0700
15                                                  Facsimile: (212) 818-0477

16
                                                    Attorneys for Plaintiff and the Class
17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# Labaton
# Sucharow

**RESUME OF**

**LABATON SUCHAROW LLP**

**ANTITRUST PRACTICE GROUP**

# THE FIRM AND ITS ACHIEVEMENTS

## Table of Contents

Antitrust Practice Group ...........................................................................................................................1

Major Recoveries In Antitrust Actions.....................................................................................................1

Court Commentary About The Firm's Antitrust Practice .............................................................2

Current Lead Or Co-Lead Counsel Appointments.....................................................................3

Other Major Pending Antitrust Cases ........................................................................................6

Significant Settlements In Which The Firm Played A Major Role ...............................................8

The Firm's Role In Advancing Corporate Governance ............................................................ 10

Attorneys at Labaton Sucharow ............................................................................................... 12

    LAWRENCE A. SUCHAROW, CHAIRMAN ................................................................... 12

    BERNARD PERSKY, PARTNER ..................................................................................... 13

    BARBARA J. HART, PARTNER....................................................................................... 15

    THOMAS A. DUBBS, PARTNER .................................................................................... 16

    HOLLIS L. SALZMAN, PARTNER................................................................................... 18

    CHRISTOPHER J. MCDONALD, PARTNER ................................................................... 19

    RICHARD T. JOFFE, OF COUNSEL ............................................................................... 20

    GREGORY ASCIOLLA, ASSOCIATE............................................................................... 21

    MICHAEL W. STOCKER, ASSOCIATE ........................................................................... 22

    KELLIE SAFAR-LERNER, ASSOCIATE ........................................................................... 23

    JESSICA J. BOXER, ASSOCIATE.................................................................................... 24

    VICKY KU, ASSOCIATE ................................................................................................ 24

    MORISSA FALK, ASSOCIATE ........................................................................................ 25

Founded in 1963, Labaton Sucharow LLP is an internationally respected law firm with more than 60 attorneys and a professional staff that includes certified public accountants, financial analysts, e-discovery specialists and investigators with extensive private sector and federal law enforcement experience. The Firm is based in New York City and has relationships throughout Europe.

Labaton Sucharow's experienced antitrust counsel have engaged in major complex antitrust, securities, consumer, products liability and RICO class action litigation throughout the United States involving commercial activities ranging from trading derivatives (copper, natural gas and crude oil futures, equity options), to supplying inputs to production and related services (industrial chemicals, food additives, paper, resins, vitamins, ocean freight shipping), to selling finished goods (food products, prescription drugs), to salary disputes.

Labaton Sucharow is also known and respected for its Investor Protection Litigation Group, which offers comprehensive services for our institutional investor clients and has recovered, through trial and settlement, more than $3 billion for the benefit of investors who have been victimized by such diverse schemes as stock price manipulation, mismanagement, and fraudulent offerings of securities. In addition to obtaining monetary recoveries for injured investors, the Group regularly secures corporate governance reforms to meaningfully change the way that boards of directors and management of defendant companies operate, thus minimizing the likelihood that perpetrators of securities fraud will repeat their wrongful conduct.

Visit our website at **www.labaton.com** for more information about our Firm.

## ANTITRUST PRACTICE GROUP

The Firm's Antitrust Practice Group represents businesses, unions and consumers in class actions to combat price-fixing, monopolization, bid-rigging and other anticompetitive or unfair business practices. Our clients include both "direct" purchasers with federal antitrust claims and "indirect" purchasers with state law claims.

The Firm's pioneering efforts in antitrust litigation are exemplified by its having long been on the front lines in the struggle to control the rising cost of prescription pharmaceuticals. In 1996, in the *In re Brand Name Prescription Drug Litigation*, Labaton Sucharow obtained a $65 million settlement on behalf of consumers. In addition to obtaining this substantial recovery, the Firm secured Court approval to use settlement funds to subsidize approximately one million prescriptions for low-income patients at community health centers in eleven states. Since then, the Firm has recovered almost $1 billion for prescription drug purchasers injured by pharmaceutical company misconduct.

## MAJOR RECOVERIES IN ANTITRUST ACTIONS

As Lead or Co-Lead Counsel, Labaton Sucharow's Antitrust Practice Group has achieved many outstanding results. Recent (2000 - 2007) highlights include the following:

- $101 million in settlements on behalf of a class of NYMEX natural gas futures traders injured by defendant energy companies' alleged manipulation of published price indices. This is the second-largest class action commodities manipulation recovery on record. *In re Natural Gas Commodity Litigation*, C.A. No. 1:03-cv-06186 (VM) (S.D.N.Y.).

- $47 million in settlements on behalf of a class of equity options purchasers injured by an alleged scheme to restrict the exchange listing of equity options. *In re Stock Exchanges Options Trading Antitrust Litigation*, MDL No. 1283; C.A. No. 1:99-cv-00962 (RCC) (S.D.N.Y.).

- $90 million settlement on behalf of third-party payors (union health and welfare funds and insurers) nationwide, and consumers in certain states, for claims that Bristol-Myers Squibb engaged in monopolistic and anticompetitive conduct in marketing BuSpar, an anti-anxiety drug. *In re Buspirone Antitrust Litigation*, MDL No. 1413; C.A. No. 1:01-md-01413 (JGK) (S.D.N.Y.).

- $135.4 million in settlements on behalf of consumers and third-party payors nationwide for claims that Mylan Laboratories, Inc. implemented unlawful and anticompetitive price increases for generic versions of the anti-anxiety drugs Lorazepam and Clorazepate. *In re Lorazepam and Clorazepate Antitrust Litigation*, MDL No. 1290; C.A. No. 1:99-cv-01082 (TFH) (D.D.C.).

- $44.5 million settlement on behalf of consumers and third-party payors for claims that DuPont Pharmaceuticals Company unlawfully suppressed generic competition for Coumadin, a blood-thinning drug. *In re Warfarin Sodium Antitrust Litigation*, MDL No. 1232; C.A. No. 1:98-md-01232 (SLR) (D. Del.).

- $18 million in settlements of price fixing and market allocation claims against Pfizer, Inc. and others on behalf of businesses that directly purchased the food additives Maltol and Sodium Erythorbate. *In re Maltol Antitrust Litigation*, C.A. No. 1:99-cv-05931 (TPG) (S.D.N.Y.).

- Almost $90 million in settlements in California state court on behalf of business purchasers of copper products harmed by the alleged unlawful inflation of copper prices by Sumitomo Corporation and others. *Heliotrope General, Inc. v. Credit Lyonnais Rouse, Ltd., et al.*, C.A. No. GIC749280 (JMB) (Superior Court, County of San Diego, California).

## COURT COMMENTARY ABOUT THE FIRM'S ANTITRUST PRACTICE

- *"I think the lawyering in this case is most commendable...[Counsel] have accorded themselves in a manner that allows us to be proud of the profession."*

  — Judge Myron S. Greenberg

- *"This Court has been helped along every step of the way by some outstanding lawyering... [Y]ou can hardly say that there has been anything but five star attorneys involved in this case."*

  — Judge Moria G. Krueger

- *"I'll join my learned colleagues...in commending counsel in arriving at something that represents a great deal of hard work and a great deal of ingenuity in putting together a settlement of this magnitude and complexity."*

  — Judge Carl O. Bradford

  *In re Brand Name Prescription Drug Litigation* settlement comments from the bench. Courts in ten states and the District of Columbia approved almost $65 million in cash settlements on behalf of consumers who purchased brand-name drugs at retail from brand name prescription drug manufacturers. Judges Greenberg, Krueger and Bradford oversaw, respectively, the Minnesota, Wisconsin and Maine actions. *See Kerr v. Abbott Laboratories*, C.A. No. 96-2837 (MSG) (4th Judicial District, Hennepin County, Minnesota); *Scholfield v. Abbott Laboratories, et al.*, C.A. No.

96-cv-460 (MGA) (Circuit Court, Dane County, Wisconsin), *Karofsky v. Abbott Laboratories, et al.,* C.A. No. cv-95-1009 (COB) (Superior Court, Cumberland County, Maine).

- *"The class counsel are well-qualified to litigate this type of complex class action, and they showed their effectiveness in the case at bar through the favorable cash settlement they were able to obtain."*

   — Chief Judge Sue L. Robinson

*In re Warfarin Sodium Antitrust Litigation*, MDL 1232; C.A. No. 1:98-md-01282 (SLR) (D. Del.) (approving $44.5 million cash settlement).

- *"Let me say that the lawyers in this case have done a stupendous job. They really have."*

   — Judge John Koeltl

*In Re Buspirone Antitrust Litigation*, MDL No. 1413; C.A. No. 1:01-md-01413 (JGK) (S.D.N.Y.) (approving $90 million settlement with Bristol-Myers Squibb).

## CURRENT LEAD OR CO-LEAD COUNSEL APPOINTMENTS

### *IN RE AIR CARGO SHIPPING SERVICES ANTITRUST LITIGATION* C.A. NO. 1:06-MD-01775 (CBA) (E.D.N.Y.)

In November 2006, Labaton Sucharow was appointed co-lead counsel for plaintiffs and a proposed class of businesses and consumers who allege that the defendant airlines participated in a global conspiracy to fix shipment surcharges in the $50 billion airfreight shipping services industry and to allocate customers, routes and territories. The case is still in its early stages; a Consolidated Amended Complaint was filed in February 2007 and the parties are currently awaiting a decision on defendants' motions to dismiss.

### *IN RE ABBOTT LABORATORIES ANTITRUST LITIGATION* C.A. NO. 4:04-CV-01511-CW (N.D. CAL.)

Labaton Sucharow has been prosecuting the case as co-lead counsel since 2004, shortly after Abbott raised the price of a key HIV drug, Norvir, by 400%. Since then, the Firm has scored significant victories on behalf of patients with HIV and their insurers.

Norvir is a critical component of an antiretroviral drug "cocktail" used in the treatment of HIV and AIDS; when used in combination treatment, Norvir significantly boosts the efficacy of the other HIV/AIDS drugs it is paired with. Abbott is allegedly trying to drive the medical community to either use Abbott's own AIDS treatment combination, called Kaletra (which contains the active ingredient in Norvir), or pay exorbitant amounts for Norvir as a stand alone product. In 2003, Abbott quadrupled the price of Norvir – thus making its use in combination

with HIV/AIDS drugs of other manufacturers significantly more expensive – but did not raise the price of Kaletra. Other HIV/AIDS drug cocktails containing Norvir are more effective than Kaletra, so third-party payors such as the Service Employees International Union Health and Welfare Fund – the Firm's client and lead plaintiff – claim they have been forced to pay an unlawful price increase that violates antitrust laws. Despite boycotts by some HIV physicians and investigations launched by several states and a congressional committee, Abbott refused to roll back its anticompetitive price hike.

Thus far Labaton Sucharow has successfully defeated Abbott's motion to dismiss the case, and on July 6, 2006, in a ground-breaking decision, United States District Judge Claudia Wilken denied Abbott's motion for summary judgment. Abbott argued that it owned a patent on the method of using Norvir to boost other AIDS drugs, and that it could legally take steps to prevent consumers from using Norvir with other HIV drugs. In rejecting Abbott's argument the Court made key rulings dealing with the intersection of intellectual property and antitrust law. On June 12, 2007, the Court granted our motion and certified a nationwide class of consumers and third-party payors for injunctive relief and a 48-state class for unjust enrichment damages.

The case, which if successful will preserve legitimate competition in the market for drugs critical to the survival of people living with AIDS, is set to go to trial in June 2008.

### IN RE FOUNDRY RESINS ANTITRUST LITIGATION
### C.A. NO. 2:04-MD-01638-GLF-MRA (S.D. OHIO)

Labaton Sucharow has been appointed co-lead counsel for a plaintiff class of direct purchasers who allege that defendant suppliers have illegally conspired to fix prices, rig bids and allocate customers in the market for foundry resins. In late 2005, the Court rejected the motion by a foreign defendant corporation to dismiss claims against it for lack jurisdiction. Plaintiffs' motion for class certification has been granted and merits discovery is ongoing.

### IN RE CRUDE OIL COMMODITY LITIGATION
### C.A. NO. 1:06-CV-06677 (NRB) (S.D.N.Y.)

In October 2006, Labaton Sucharow was appointed co-lead counsel for a proposed class of crude oil traders on the New York Mercantile Exchange. Plaintiffs allege that defendant British Petroleum manipulated crude oil spot and futures prices by manipulating the available supply at a key storage point. Plaintiffs have filed a consolidated amended complaint, and discovery will begin shortly.

### VISTA HEALTHPLAN, INC. V. SANOFI-AVENTIS
### C.A. NO. 1:06-CV-00226-MHW (S.D. OHIO)

Labaton Sucharow is Chair of the Executive Committee representing third-party payors and consumers in litigation against pharmaceutical companies Sanofi-Aventis and Bristol-Myers Squibb and related entities, and Canadian generic pharmaceutical manufacturer Apotex Corporation. Sanofi and Bristol-Myers jointly market Plavix, which is used primarily to treat patients who are at risk for heart attack and strokes. They are accused of instituting sham patent litigations against Apotex and other potential sellers of generic versions of Plavix in an effort to

deny purchasers of Plavix the benefits of competition – less expensive generic versions of Plavix. Sanofi and Bristol-Myers also entered into an unlawful and anticompetitive agreement with Apotex, whereby Apotex agreed not to market a generic version of Plavix in exchange for payments from Sanofi and Bristol-Myers. The case is in its very early stages.

## IN RE TRICOR INDIRECT PURCHASER ANTITRUST LITIGATION
## C.A. NO. 1:05-CV-00360 (***) (D. DEL.)

Labaton Sucharow is co-lead counsel for a plaintiff class of third-party payors and consumers against Abbott Laboratories and French pharmaceutical company Fournier. Abbott markets the TriCor brand of prescription cholesterol-lowering drug products in the US pursuant to a license from Fournier, which holds several patents relating to TriCor. Abbott and Fournier are accused of abusing FDA regulations, defrauding the US Patent and Trademark Office and engaging in anticompetitive conduct in the marketplace to deprive doctors and consumers of a meaningful opportunity to choose less expensive generic versions of TriCor. The court denied the defendants' motion to dismiss in May 2006, discovery is ongoing and plaintiffs' motion for class certification is pending.

## ANIMALFEEDS INTERNATIONAL CORP. V. STOLT-NIELSEN SA
## C.A. NO. 06-CV-00420 (JSR) (S.D.N.Y.), APPEAL FILED, NO. 06-3473-CV (2d CIR.)

Labaton Sucharow is co-lead counsel on behalf of a proposed class of direct purchasers of parcel tanker ocean shipping services. Plaintiff alleges that the defendant shipping companies engaged in a global cartel and conspiracy to restrain the world market for parcel tanker shipping services, which caused the plaintiff and the proposed class to pay inflated prices for the transportation of bulk liquid chemicals, edible oils, acids, and other specialty liquids. Many of the defendants have pleaded guilty to the alleged anticompetitive conduct and paid substantial fines. Although plaintiff initially prevailed in its motion to proceed in arbitration as a class action, a district court overruled the unanimous decision of the 3-member arbitration panel. The district court's decision is on appeal to the Second Circuit Court of Appeals. Plaintiff maintains that where a contract requires disputes concerning statutory rights to be resolved in arbitration, plaintiffs must be allowed to seek relief as a class in order to effectively vindicate their rights.

## IN RE CIPROFLOXACIN HYDROCHLORIDE ANTITRUST LITIGATION
## C.A. NO. 05-2863-CV (2d CIR.)

Labaton Sucharow is co-lead counsel for a class of third-party payors and consumers. Defendant, a brand-name drug company, paid a generic competitor about $400 million to settle patent infringement litigation involving a lucrative brand-name drug, Bayer's Cipro® brand antibiotic. The generic competitor had claimed that the brand-name drug company's patent was invalid or unenforceable. A final federal court verdict to that effect would have permitted generic versions of the brand-name product to come to market, resulting in much lower prices for consumers and third-party payors. The brand-name manufacturer paid off the generic challenger to drop the suit. This phenomenon is known as a "reverse payment" settlement because in ordinary patent infringement cases, it is unheard of for the patent holder to pay the alleged infringer to settle a case; any money paid in settlement usually flows from the infringer to the patent holder. If allowed to stand, brand-name drug companies will continue to pay off

rivals who challenge lucrative patents of dubious validity, resulting in continued monopoly-level pricing of essential medicines.

This matter is currently on appeal to the United States Court of Appeals for the Second Circuit.

### IN RE OXYCONTIN ANTITRUST LITIGATION
### C.A. NO. 1:04-MD-01603 (SHS) (S.D.N.Y.)

Labaton Sucharow is co-lead counsel and represents plaintiff third-party payors and consumers in this antitrust and consumer protection class action. Plaintiffs allege that consumers have paid inflated prices for the drug OxyContin® because defendant Purdue Pharma purposely misled the Patent and Trademark Office about the efficacy of OxyContin® in obtaining the patent. Plaintiffs further claim that Purdue initiated sham patent infringement litigation to stave off generic competition and thereby maintain its monopolistic prices. The parties are awaiting a decision on the defendants' motions to dismiss.

### IN RE SEARS, ROEBUCK & CO. TOOLS
### MARKETING AND SALES PRACTICES LITIGATION
### C.A. NO. 1:05-CV-04742 (JFG) (N.D. ILL.)

Labaton Sucharow, as co-lead counsel, represents consumers who allege they were misled into paying a premium for Craftsman tools that were labeled and advertised as high quality products that were "Made in USA." In fact, metal parts of Craftsman tools labeled "Made in USA" were made in Austria, Denmark, China, India, and Mexico. Recently, Labaton Sucharow commenced depositions of current and former high level Sears executives.

## OTHER MAJOR PENDING ANTITRUST CASES

### IN RE PAYMENT CARD INTERCHANGE FEE AND
### MERCHANT DISCOUNT ANTITRUST LITIGATION
### C.A. NO. 1:05-MD-01720 (JG) (E.D.N.Y.)

Labaton Sucharow, a member of Plaintiffs' Executive Committee, represents merchants who filed suit against Visa, MasterCard, and their 32 member banks for conspiring to impose exorbitant "interchange fees" – a per-use charge on credit cards, imposed on the retailer. The consolidated cases are currently in the midst of discovery.

### IN RE FUNERAL CONSUMERS ANTITRUST LITIGATION
### C.A. NO. 4:05-CV-03394 (KMH) (S.D. TEX.)

Labaton Sucharow is currently working with other counsel in prosecuting claims that the three largest funeral home chains in the U.S. and the dominant manufacturer of caskets have engaged in a group boycott against independent casket discounters and fixed the prices of caskets at artificially high levels in violation of state and federal antitrust laws. These unlawful practices are alleged to have suppressed competition in casket sales, forcing that consumers to pay artificially

inflated prices for caskets. Plaintiffs' motion for class certification has been briefed and we are awaiting a ruling from the court.

## IN RE NEW MOTOR VEHICLES CANADIAN EXPORT ANTITRUST LITIGATION
## C.A. NO. 2:03-MD-01532 (DBH) (D. ME.)

Labaton Sucharow, a member of Plaintiffs' Executive Committee, represents Plaintiffs who allege that the major car manufacturers conspired to prevent lower-priced new cars sold in Canada from being imported into the United States. The effect of the conspiracy was to restrict inter-brand competition within the United States market for new cars, to maintain new car prices in the United States at levels that are significantly higher than prices charged in Canada for the same cars, and to maintain the prices for new cars in the United States at supracompetitive levels. Defendants' Rule 123(f) appeal of the District Court's Class Clarification Order was granted and the parties are awaiting a decision from the United States Court of Appeals for the First Circuit.

## AMERICAN BANANA CO., INC. V. DEL MONTE FRESH PRODUCE COMPANY
## C.A. NO. 1:03-CV-10230-RMB (S.D.N.Y.)

Labaton Sucharow, a member of Plaintiffs' Executive Committee, represents direct purchasers of a particular pineapple variety in this litigation. Del Monte, the world's leading seller of pineapples, allegedly obtained a patent for the extra-sweet pineapple by defrauding the U.S. Patent and Trademark Office, and misleadingly used that patent to interfere with competitors and initiate sham litigation against them. The case is currently in the process of discovery, and class certification issues are being briefed.

## IN RE DDAVP INDIRECT PURCHASER ANTITRUST LITIGATION
## C.A. NO. 7:05-CV-02237 (CLB) (S.D.N.Y.)

Labaton Sucharow brought this antitrust suit on behalf of a class of consumers and prescription drug benefit providers alleging antitrust claims against Dutch drug company Ferring and U.S. drug company Aventis Pharmaceuticals. The defendants are alleged to have unlawfully maintained their monopoly on the diuretic drug, desmopressin acetate (known as DDAVP), by fraudulently procuring a patent that effectively blocked generic drug manufacturers from coming to market with less expensive generic versions of DDAVP. Labaton Sucharow, as third-party payor allocation counsel, is currently working with other counsel in prosecuting claims on behalf of endpayors who overpaid for DDAVP.

## IN RE HYDROGEN PEROXIDE ANTITRUST LITIGATION
## C.A. NO. 2:05-MD-01682 (SD) (E.D. PA.)

Labaton Sucharow brought direct purchaser antitrust claims against thirteen of the world's leading hydrogen peroxide manufacturers alleging that they formed a cartel that horizontally restrained trade for at least the past decade. Hydrogen peroxide is a versatile industrial chemical widely used by the pulp, paper and textile industries to bleach their products, by municipalities to treat drinking and industrial waste water, and by manufacturers of sodium perborate, which is used in dishwashing and laundry agents. Several dozen individual actions have been consolidated for pretrial purposes in the United States District Court for the Eastern District of

Pennsylvania.  Labaton Sucharow is working with other counsel for direct purchasers in the consolidated class cases to prosecute claims against the defendants on behalf of corporations that bought hydrogen peroxide directly from one or more of the defendants.  The Court recently rejected the defendants' motion to dismiss the plaintiffs' claims, and certified the class of direct purchasers.  Discovery is ongoing.

## IN RE NEURONTIN ANTITRUST LITIGATION
## MDL NO. 1479; C.A. NO. 2:02-CV-01390 (FSH) (D.N.J.)

This case arises from Warner-Lambert's alleged abuse of the patent process in order to maintain a monopoly on a drug long past the original patent term.  Gabapentin, sold under the brand name Neurontin, was approved by the FDA in 1993, and it is alleged that the last legitimately applicable patent expired on January 16, 2000.  No generic formulations for Neurontin were launched, however, until October 8, 2004, when they were marketed "at risk" during pending patent litigation.  Labaton Sucharow is third-party payor allocation counsel.  Plaintiffs will shortly file an amended complaint and begin discovery.

## SIGNIFICANT SETTLEMENTS IN WHICH
## THE FIRM PLAYED A MAJOR ROLE

## IN RE MICROCRYSTALLINE CELLULOSE ANTITRUST LITIGATION
## C.A. NO. 2:10-MD-01402 (TNO) (E.D. PA.)

Labaton Sucharow represented direct purchasers of microcrystalline cellulose, a natural substance derived from the pulp of wood and often used as a safe filler for tablets and to enhance certain desirable qualities in common food products such as fat reduction or fiber enhancement.  FMC Corporation and Asahi Chemical Industry Co, Ltd. were accused of entering into agreements to attempt to corner the market and restrain competition for the manufacture and sale of this product, resulting in higher prices.  In 2006, the court approved a settlement of the case of over $50 million.

## IN RE POLYCHLOROPRENE RUBBER ANTITRUST LITIGATION
## C.A. NO. 3:05-MD-01642 (SRU) (D. CONN.)

Labaton Sucharow represented a class of direct purchasers of Neoprene, a synthetic rubber product.  Due to defendants' conspiracy to raise, fix, maintain and/or stabilize prices of Neoprene, direct purchasers were forced to pay artificially inflated prices for Neoprene.  Labaton Sucharow acted as Settlement Counsel in the action and allocation counsel in the proceedings concerning the allocation of the Neoprene case's share of Bayer's overall settlement in the Rubber Chemicals, Neoprene, and EPDM antitrust cases.  The settlements were approved in 2006.

*RELAFEN ANTITRUST LITIGATION*
*C.A. NO. 1:01-CV-12222 (WGY) (D. MASS.)*

In 2002, Labaton Sucharow filed a class action on behalf of direct purchasers (e.g. wholesalers and distributors) against GlaxoSmithKline Corporation (GSK) and its predecessors. The suit alleged that GSK fraudulently obtained a patent to prevent a generic version of Relafen® from coming to the market. Relafen® is an anti-inflammatory drug used in the treatment of arthritis, rheumatism, gout, tendonitis and menstrual cramps. The parties agreed to a $175 million settlement, which was finally approved by the Court on April 9, 2004. The Firm served as Co-Chair of the Discovery Committee.

*RYAN-HOUSE V. GLAXOSMITHKLINE PLC*
*C.A. NO. 2:02-CV-0442 (HCM) (E.D. VA.)*

Labaton Sucharow represented a class of prescription drug benefit providers and consumers who alleged that GlaxoSmithKline misled the U.S. Patent and Trademark Office into issuing "evergreening" patents to protect Augmentin® from competition from generic drug substitutes. In 2005, the court approved a settlement of $29 million. The Firm served as third-party payor allocation counsel.

*NICHOLS V. SMITHKLINE BEECHAM CORPORATION*
*C.A. NO. 2:00-CV-06222 (JP) (E.D. PA.)*

Labaton Sucharow represented a class of consumers and prescription drug benefit providers who overpaid for the drug Paxil, a commonly prescribed medication used to treat depression. Plaintiffs alleged that GlaxoSmithKline monopolized the market for Paxil and its generic bioequivalents, by filing serial sham litigations intended to block lower-priced generic competitors. In April 2005, the court approved a $65 million settlement. The Firm served as third-party payor allocation counsel.

*IN RE VITAMIN PRODUCTS ANTITRUST LITIGATION*
*CASE NO. 96-CV-0460 (WISC. CIRC. CT. AND OTHER STATE COURTS)*

Labaton Sucharow represents plaintiffs who alleged a horizontal price-fixing and market allocation conspiracy among vitamin manufacturers. As a member of the National Executive Committee and as Co-Lead Counsel in the Wisconsin state indirect purchaser case, Labaton Sucharow has recovered over $267.5 million to date on behalf of indirect purchasers of vitamins.

*VISTA HEALTHPLAN, INC. V. BRISTOL-MYERS SQUIBB CO.*
*CASE NO. 1:01-CV-01295 (EGS) (D.D.C.)*

Bristol-Myers Squibb allegedly listed phony patents with the FDA in order to unlawfully extend its monopoly for the anti-cancer drug, Taxol. Labaton Sucharow served as sub-class co-lead counsel for third-party payors in this litigation, whose claims were settled for over $15 million. The Firm served as third-party payor allocation counsel.

*KELLEY SUPPLY, INC. V. EASTMAN CHEMICAL CO.*
*CASE NO. 99-CV-001528 (CIR. CT., DANE CO., WIS.)*
        *-AND-*
*ORLANDO'S BAKERY V. NUTRINOVA NUTRITION SPECIALTIES & FOOD INGREDIENTS, GMBH*
*CASE NO. 99-560-II (CHANCERY COURT, DAVIDSON CO., TENN.)*

> Labaton Sucharow, as co-lead counsel, represented a multistate class of purchasers of potassium sorbate, a chemical preservative used in food products, alleging that defendants engaged in a worldwide conspiracy to fix prices for the product. Plaintiffs obtained settlements in Wisconsin and Tennessee totaling over $10.4 million.

## THE FIRM'S ROLE IN ADVANCING CORPORATE GOVERNANCE

Not only is Labaton Sucharow a recognized leader in Antitrust and Securities litigation, the Firm is also committed to corporate governance reform. The Firm is a patron of the John L. Weinberg Center for Corporate Governance of the University of Delaware. The Center provides a forum for business leaders, directors of corporate boards, the legal community, academics, practitioners, graduate and undergraduate students, and others interested in corporate governance issues to meet and exchange ideas. One of Labaton Sucharow's senior partners, Edward Labaton, is a member of the Advisory Committee of The Center. Additionally, Mr. Labaton has for more than 10 years served as a member of the Program Planning Committee for the annual ALI-ABA Corporate Governance Institute, and serves on the Task Force on the Role of Lawyers in Corporate Governance of the Association of the Bar of the City of New York.

On behalf of its institutional and individual investor clients, Labaton Sucharow has achieved some of the largest precedent-setting settlements since the enactment of the Private Securities Litigation Reform Act of 1995, and has helped deter future instances of securities fraud by negotiating substantial corporate governance reforms as a condition of many of its largest settlements.

Because of the depth of their experience and deep commitment to the principles of corporate governance, many Labaton Sucharow partners have served as featured speakers at various symposia and lectures on topics relating to corporate governance and reform.

The Firm's clients have secured meaningful reforms, in addition to substantial monetary recoveries, in significant settlements in securities class actions, such as:

*IN RE WASTE MANAGEMENT, INC. SECURITIES LITIGATION*
*C.A. NO. 4:99-CV-02183 (MH) (S.D. TEX.)*

Labaton Sucharow, as Lead Class Counsel representing Lead Plaintiff, State of Connecticut Retirement Plans & Trust Funds, caused the Company to fund promotion of a shareholder vote in favor of a binding resolution to declassify its board of directors. The resolution was approved by its shareholders. As a consequence of Labaton Sucharow's efforts, the Company further agreed to amend its Audit Committee charter, which led to its enhanced effectiveness.

*IN RE VESTA INSURANCE GROUP SECURITIES LITIGATION*
*C.A. NO. 2:98-CV-01407 (KOB) (N.D. ALA.)*

Labaton Sucharow, as Lead Counsel representing Lead Plaintiff, Florida State Board of Administration, caused the Company to adopt provisions requiring that: (i) a majority of its Board members be independent; (ii) at least one independent director be experienced in corporate governance; (iii) the audit, nominating and compensation committees be comprised entirely of independent directors; and (iv) the audit committee comply with the recommendations of a Blue Ribbon Panel on the effectiveness of audit committees.

*IN RE ORBITAL SCIENCES CORPORATION SECURITIES LITIGATION*
*C.A. NO. 1:99-CV-00197 (LMB) (E.D. VA.)*

Labaton Sucharow, as Lead Counsel representing Lead Plaintiff, New York City Pension Funds, negotiated the implementation of measures concerning the Company's quarterly review of its financial results, the composition, role and responsibilities of its Audit and Finance committee, and the adoption of a Board resolution providing guidelines regarding senior executives' exercise and sale of vested stock options.

*IN RE BRISTOL-MYERS SQUIBB SECURITIES LITIGATION*
*C.A. NO. 3:00-CV-01990 (SRC) (D.N.J.)*

Labaton Sucharow, as Lead Counsel representing Lead Plaintiff, LongView Collective Investment Fund of the Amalgamated Bank, negotiated noteworthy corporate governance reforms. Bristol-Myers Squibb has agreed to publicly disclose the following information concerning all of its drugs marketed for at least one indication: a description of the clinical study design and methodology; results of the clinical trials; and safety results, including the reporting of adverse events seen during the clinical trials. The disclosures will be posted on BMS's website, www.BMS.com, as well as an industry website, www.clinicalstudyresults.org.

BMS has agreed to post these disclosures for a 10-year period following approval of the settlement, and has further agreed that any modifications to the disclosure protocol must be approved by the Court, at the request of Labaton Sucharow as Lead Counsel, unless the modifications increase the scope of the disclosures. The corporate reform measures obtained in this case exceed the scope of reforms obtained by New York State Attorney General Eliot Spitzer in his settlement of an action against GlaxoSmithKline in that the State Action was limited to disclosures regarding drugs sold in the United States, whereas as a result of the BMS settlement, the Company must post the clinical trial results of drugs marketed throughout the world.

## ATTORNEYS AT LABATON SUCHAROW

Among the attorneys at Labaton Sucharow who are involved in the prosecution of antitrust litigation are Partners Lawrence A. Sucharow, Bernard Persky, Barbara J. Hart, Thomas A. Dubbs, Hollis L. Salzman, Christopher J. McDonald, Of Counsel Attorney Richard T. Joffe, and Associates Gregory Asciolla, Michael W. Stocker, Kellie Safar-Lerner, Jessica J. Boxer, Vicky Ku and Morissa Falk. A short description of the qualifications and accomplishments of each follows.

### LAWRENCE A. SUCHAROW, CHAIRMAN                lsucharow@labaton.com

*Lawrence A. Sucharow*, a nationally recognized leader of the securities class action bar, is the managing partner of Labaton Sucharow. In this capacity, he participates in developing the litigation and settlement strategies for virtually all of the class action cases Labaton Sucharow prosecutes.

For more than three decades, Mr. Sucharow has devoted his practice to counseling clients and prosecuting cases on complex issues involving securities, antitrust, business transaction, product liability, and other class actions. Mr. Sucharow has successfully recovered more than $1 billion on behalf of institutional investors such as state, city, county and union pension funds, shareholders of public companies, bondholders, purchasers of limited partnership interests, purchasers of consumer products and individual investors.

Mr. Sucharow recently obtained $225 million in savings for the class of *In re CNL Resorts, Inc. Securities Litigation*. In other recently settled actions, Mr. Sucharow undertook a lead role in obtaining

benefits for class members of $200 million (*In re Paine Webber Incorporated Limited Partnerships Litigation*); $110 million partial settlement (*In re Prudential Securities Incorporated Limited Partnerships Litigation*); $91 million (*In re Prudential Bache Energy Income Partnerships Securities Litigation*); and more than $92 million (*Shea v. New York Life Insurance Company*). In approving the *Prudential* settlement, Judge Milton Pollack referred to the efforts of plaintiffs' counsel as "Herculean," stating: "…this case represents a unique recovery – a recovery that does honor to every one of the lawyers on your side of the case."

In addition, in 2002 Mr. Sucharow served as Co-Trial Counsel in a six-week trial of a federal securities law claim on behalf of 18,000 passive investors in the Real Estate Associates limited partnerships. That trial resulted in an unprecedented $182 million jury verdict.

Mr. Sucharow is a member of the Federal Bar Council's Committee on Second Circuit Courts, and the Federal Courts Committee of the New York County Lawyers' Association. He is also a member of the Securities Law Committee of the New Jersey State Bar Association and was the founding chairman of the Class Action Committee of the Commercial and Federal Litigation Section of the New York State Bar Association from 1988-1994. He was honored by his peers by his election to serve as President of the National Association of Shareholder and Consumer Attorneys (NASCAT), a membership organization of approximately 100 law firms which practice complex civil litigation including class actions.

Mr. Sucharow earned a B.B.A., *cum laude*, from Baruch School of the City College of the City University of New York in 1971 and a J.D., *cum laude*, from Brooklyn Law School in 1975.

Mr. Sucharow is admitted to practice in New York and New Jersey.

## BERNARD PERSKY, PARTNER                                   *bpersky@labaton.com*

**Bernard Persky** is the head of the Firm's Antitrust Practice Group. For more than 38 years his practice has involved complex business litigation and class actions, primarily antitrust, trade regulation, securities fraud and civil RICO. Among his peers, he is recognized as a leading antitrust litigator. He

has played a key role in major antitrust class actions that have resulted in monetary recoveries to class members, including consumers and businesses, of well over $1 billion.

In *County of Suffolk v. Long Island Lighting Company*, a case in which Mr. Persky was Co-Lead Trial Counsel, the Second Circuit, in upholding a $400 million class settlement and awarding attorneys' fees to Plaintiff, quoted the trial judge, Honorable Jack B. Weinstein, as stating "counsel [has] done a superb job [and] tried this case as well as I have ever seen any case tried."

Mr. Persky has acted as Co-Lead Counsel in major antitrust class actions, including: *In re Natural Gas Commodity Manipulation Litigation* ($101 million settlement); *In re Warfarin Sodium Antitrust Litigation* ($44.5 million settlement); *In re Buspirone Patent Litigation* ($90 million settlement); *In re Lorazepam & Clorazepate Antitrust Litigation* ($135 million settlement); *In re Stock Exchanges Options Antitrust Litigation* ($47 million settlement); *In re Foundry Resins Antitrust Litigation; In re TriCor Antitrust Litigation; In re Parcel Tanker Shipping Services Antitrust Litigation; In re OxyContin Antitrust Litigation* and *In re Crude Oil Commodity Litigation.*

He is a member of the Advisory Board of the American Antitrust Institute and the Executive Committee of the Antitrust Section of the New York State Bar Association and co-author of an article entitled "Antitrust Protections Expanded In New York," *New York Law Journal.* He has also lectured before bar associations (Indirect Purchaser Antitrust Litigation) and other interested groups (*How Viable Is Hatch Waxman Class Action Litigation: Plaintiffs' Perspective*).

Mr. Persky earned a B.A. from the City College of New York in 1965, graduating Phi Beta Kappa, and received a J.D., *cum laude*, from Harvard Law School in 1968.

He is admitted to practice in New York, before the United States Supreme Court, the United States Courts of Appeals for Second, Third and Fifth Circuits and the United States District Courts for the Southern, Eastern and Northern Districts of New York.

BARBARA J. HART, PARTNER                                    *bhart@labaton.com*

**Barbara J. Hart** represents a broad range of clients in complex class action litigation, with a particular emphasis on securities and antitrust litigation. A member of the Firm's Executive Committee, Ms. Hart is also the founder of Labaton Sucharow's Women's Initiative, which brings professional women together to collectively advance women's influence in business.

Ms. Hart served as counsel to the Office of the Treasurer of the State of Connecticut, representing the Connecticut Retirement Plans and Trust Funds in the *In re Waste Management Securities Litigation.* That litigation, which was settled for $457 million, was the third largest securities class action settlement in history. She also represents the Office of the Treasurer of the State of Connecticut as Lead Plaintiff in the *JDS Uniphase Securities Litigation*, litigating on behalf of shareholders who lost billions when the value of JDSU shares collapsed. That case is set for trial this October.

Ms. Hart has recently been appointed Co-Lead Counsel in the Eastern District of New York federal court in the *In re Air Cargo Shipping Services Antitrust Litigation.* The action alleges an international cartel, between many major airlines, that is alleged to have raised prices and surcharges for air shipping services.

In August 2006, Ms. Hart secured a $285 million class action settlement against the El Paso Corporation. The case involved a securities fraud claim stemming from the Company's inflated earnings statements which cost shareholders hundreds of millions of dollars during a four year span.

Ms. Hart has represented the County of Suffolk and Local 237 and other health and welfare funds' interests in the prosecution and settlement of antitrust claims involving the drugs Paxil ($65 million settlement) and Augmentin ($29 million settlement).

She was also one of the principal litigators responsible for a $65 million settlement in the *In re Brand Name Drug Litigation* challenging two-tiered pricing conduct that caused pharmacy customers to overpay for their prescription drugs. The settlement was lauded by judges across the country for its

quality lawyering. Ms. Hart also represented consumers and prescription benefit insurers (both private insurers and union funds) in litigation against DuPont regarding the monopolization and marketing of Coumadin, which was settled for $44.5 million. Currently, Ms. Hart is counsel to numerous health and welfare funds including the United Federation of Teachers and of New York State Teachers in various other cases combating the rising cost of prescription drugs.

She is the co-author of an article entitled "Antitrust Protections Expanded in New York," *New York Law Journal*, June 22, 1999. In addition, Ms. Hart is regularly called upon to lecture on cutting-edge issues in her field and has appeared before the Council of Institutional Investors, The Federalist Society, the New York Bar Association, The Institute for Law and Economic Policy, the Public Funds Forum and the Practicing Law Institute.

Ms. Hart earned a B.A. from Vanderbilt University in 1982 and an M.A. from the University of North Carolina in 1987. She graduated from Fordham University School of Law in 1992 where she was a member of the *Law Review* and on the Dean's List.

She is admitted to practice in New York and Connecticut as well as the following federal courts: the United States Supreme Court; the United States Courts of Appeals for the Second and Third Circuits; and the United States District Courts for the Southern and Eastern Districts of New York.

## THOMAS A. DUBBS, PARTNER                                    *tdubbs@labaton.com*

*Thomas A. Dubbs* specializes in the representation of institutional investors including pension funds in securities fraud and other types of litigation. A recognized leader in the field, Mr. Dubbs represented the first major private institutional investor to become a lead plaintiff in a class action under the Private Securities Litigation Reform Act.

Mr. Dubbs currently serves as Lead Counsel in the federal securities fraud class actions brought against AIG on behalf of Lead Plaintiff Ohio (comprised of several of Ohio's retirement systems) as well as Lead Counsel for the class and Lead Plaintiff New Mexico (comprised of several of New

Mexico's retirement systems) in the securities class actions against St. Paul Travelers Companies, Inc. in relation to the merger between The St. Paul Companies and Travelers Property Casualty Corporation.

A Labaton Sucharow team led by Mr. Dubbs successfully litigated a class action against Bristol-Myers Squibb, which resulted in a settlement of $185 million and major corporate governance reforms.

Mr. Dubbs also led the team of Labaton Sucharow attorneys that represented the Lead Plaintiff, the Florida State Board of Administrators, in the *Vesta Insurance Group* class action. To date, settlements with the Company and its auditor, KPMG, total more than $79 million, which represents more than 37% of the damages sustained by the class.

Most recently, Mr. Dubbs leads the team prosecuting the *In re HealthSouth Securities Litigation* on behalf of the New Mexico State Investment Council, the Educational Retirement Board of New Mexico, and the Michigan Pension Funds, the Court appointed Co-Lead Plaintiffs for stockholders of HealthSouth Corporation. Mr. Dubbs secured a partial settlement of $445 million from HealthSouth over the massive fraud that led to the healthcare provider's collapse and conviction of numerous former employees.

Prior to joining Labaton Sucharow, Mr. Dubbs was Senior Vice President & Senior Litigation Counsel for Kidder, Peabody & Co. where he represented the firm in many class actions, including the *First Executive* and *Orange County* litigations. Before joining Kidder, Mr. Dubbs was head of the litigation department at Hall, McNicol, Hamilton & Clark, where he was the principal partner representing Thomson McKinnon Securities Inc. in litigation matters including class actions such as the *Petro Lewis* and *Baldwin United* litigations.

He frequently lectures to institutional investors and other groups such as the Government Finance Officers Association, the National Conference on Public Employee Retirement Systems and the Council of Institutional Investors. Most recently, Mr. Dubbs spoke at the Ohio Forum on Public Retirement.

- 17 -

Mr. Dubbs received a B.A. and a J.D. from the University of Wisconsin in 1969 and 1974, respectively. In 1971, he earned an M.A. from the Fletcher School of Law and Diplomacy of Tufts University. Mr. Dubbs is a member of the New York State Bar Association and the Association of the Bar of the City of New York. He is admitted to practice in New York.

## *HOLLIS L. SALZMAN, PARTNER*                    *hsalzman@labaton.com*

*Hollis L. Salzman* is a partner in the Firm's Antitrust Practice Group. She represents businesses and consumers in cases involving federal and state antitrust law violations. She is also involved in the Firm's securities litigation practice group where she represents institutional investors in portfolio monitoring and securities litigation. Some of Ms. Salzman's clients include MARTA and the City of Macon, Georgia.

Ms. Salzman is actively engaged in the prosecution of major antitrust class actions pending throughout the United States. She is presently Co-Lead Counsel in many antitrust cases, including *In re Abbott Labs Norvir Antitrust Litigation, In re OxyContin Antitrust Litigation, In re Air Cargo Shipping Services Antitrust Litigation* and *Plavix Antitrust Litigation.* She is also actively involved in other pending major antitrust litigations, including *In re Funeral Antitrust Litigation, In re Pineapple Antitrust Litigation, In re New Motor Vehicles Canadian Export Antitrust Litigation* and *In re Live Rock Concert Antitrust Litigation.*

She also served as Co-Lead Counsel in several antitrust class actions which resulted in extraordinary settlements for consumers and third-party payors. *In re Buspirone Antitrust Litigation* ($90 million settlement); *In re Lorazepam & Clorazepate Antitrust Litigation* ($35.4 million on behalf of third-party payors, and $100 million on behalf of consumers in conjunction with the Federal Trade Commission and State Attorneys General actions); also *In re Maltol Antitrust Litigation*, and *Continental Seasonings Inc. v. Pfizer, Inc., et al.*, ($18.45 million on behalf of direct purchasers of chemical food additives). Additionally, she was principally responsible for administering a $65 million settlement with

certain brand-name prescription drug manufacturers where their conduct allegedly caused retail pharmacy customers to overpay for their prescription drugs.

Ms. Salzman is a Co-Chair of the New York State Bar Association, Commercial & Federal Litigation Section — Antitrust Committee and is co-author of an article entitled "The State of State Antitrust Enforcement," *NYSBA NYLitigator*, Winter 2003, Vol. 8, No. 1. She is also a member of the Association of the Bar of the City of New York Antitrust Committee and Women's Antitrust Bar Association. Ms. Salzman also provides *pro bono* representation to indigent and working-poor women in matrimonial and family law matters.

Ms. Salzman earned a B.A. from Boston University in 1987 and a J.D. from Nova University School of Law in 1992. She is admitted to practice in New York, New Jersey and Florida as well as before the United States District Courts for the Southern and Middle Districts of Florida; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Court of Appeals for the Eleventh Circuit.

### CHRISTOPHER J. MCDONALD, PARTNER                cmcdonald@labaton.com

**Christopher J. McDonald**, a partner in the Firm's Antitrust Practice Group, represents businesses, associations and individuals injured by anticompetitive activities. Mr. McDonald's practice also involves representing institutional investors in securities fraud cases.

Mr. McDonald was part of the team that successfully litigated *In re Bristol-Myers Squibb Securities Litigation*, in which Labaton Sucharow secured a $185 million settlement on behalf of Bristol-Myers Squibb shareholders, as well as meaningful corporate governance reforms. He has also worked on *In re Natural Gas Commodity Litigation*, a case that generated a total of $101 million in settlement funds for a class of traders who purchased, sold or settled New York Mercantile Exchange contracts.

In an ongoing case, *In re TriCor Indirect Purchaser Antitrust Litigation*, Mr. McDonald represents end-payors of the prescription drug TriCor (e.g., union health and welfare funds and consumers), who

claim that the drug's manufacturer and U.S. marketer unlawfully impeded the introduction of lower-priced generic alternatives to TriCor. Other cases in which Mr. McDonald is currently involved include the *Air Cargo Shipping Services* and *Foundry Resins* antitrust cases.

A litigator for most of his career, Mr. McDonald also has in-house and regulatory experience. As a senior attorney with a telecommunications company he regularly addressed legal, economic and public policy issues before state public utility commissions.

Mr. McDonald received his undergraduate degree, *cum laude*, from Manhattan College in 1985 and a J.D. from Fordham University School of Law in 1992, where he was on the Law Review.

Mr. McDonald is admitted to practice in New York and before the United States Court of Appeals for the Second Circuit and the United States District Courts for the Southern and Eastern Districts of New York.

### RICHARD T. JOFFE, OF COUNSEL                                          rjoffe@labaton.com

*Richard Joffe*'s practice focuses on class action litigation, including securities fraud, antitrust and consumer fraud cases. Since joining the Firm, Mr. Joffe has represented such varied clients as institutional purchasers of corporate bonds, Wisconsin dairy farmers, and consumers who alleged they were defrauded when they purchased annuities.

Prior to joining Labaton Sucharow, Mr. Joffe was an associate at Gibson, Dunn & Crutcher LLP, where he played a key role in obtaining a dismissal of claims against Merrill Lynch & Co. and a dozen other of America's largest investment banks and brokerage firms, who, in *Friedman v. Salomon/Smith Barney, Inc.*, were alleged to have conspired to fix the prices of initial public offerings.

Mr. Joffe also worked as an associate at Fried, Frank, Harris, Shriver & Jacobson where he defended Goldman Sachs & Co. against allegations of securities fraud and professional negligence. In addition, he obtained a successful settlement for several older women who alleged they were victims of

age and sex discrimination when they were selected for termination by New York City's Health and Hospitals Corporation during a city-wide reduction in force.

He co-authored "Protection Against Contribution and Indemnification Claims" in *Settlement Agreements in Commercial Disputes* (Aspen Law & Business, 2000). He is admitted to practice in New York and is a member of the Association of the Bar of the City of New York and the American Bar Association.

Mr. Joffe received a J.D. from Columbia Law School in 1993. He earned a Ph.D. from Harvard University in 1984. He earned a B.A., *summa cum laude*, from Columbia University in 1972.

Long before becoming a lawyer, Mr. Joffe was a founding member of the internationally famous rock and roll group, Sha Na Na.

## GREGORY ASCIOLLA, ASSOCIATE                                  *gasciolla@labaton.com*

*Gregory Asciolla* focuses his practice on representing consumers and businesses in complex antitrust and commodities class actions involving price fixing, monopolization, market manipulation and other anticompetitive practices. Currently, Mr. Asciolla is representing clients in *In re Air Cargo Antitrust Litigation, In re Abbott Laboratories Norvir Antitrust Litigation, In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* and *In Re Crude Oil Commodity Litigation.*

Most recently, Mr. Asciolla was an attorney at Schulte Roth & Zabel LLP, where he practiced antitrust litigation and counseling on behalf of major corporations. During his time there, he developed key legal arguments in *World Figure Skating Fed'n v. Int'l Skating Union*, an antitrust case alleging monopolization of Olympic figure skating competitions. Prior to joining Schulte Roth & Zabel LLP, Mr. Asciolla was an attorney at Morgan, Lewis & Bockius, LLP, where he practiced antitrust litigation, including the areas of price-fixing, monopolization, government investigations, mergers and acquisitions, exclusive dealing and distribution. While at Morgan Lewis, he was also involved in a major antitrust case, *U.S. v. Visa USA*, and several antitrust class actions (sodium gluconate and graphite electrodes).

Mr. Asciolla began his career as an attorney at the U.S. Department of Justice/Antitrust Division, where he focused on antitrust issues in the healthcare industry. He was involved in challenging several hospital mergers as well as investigating Dentsply International in a significant exclusive distribution matter.

While at Morgan Lewis, Mr. Asciolla also led a *pro bono* case, *Leonardo v. U.S.*, for an artist claiming breach of contract, copyright infringement and violation of moral rights against the U.S. for the destruction of her artwork while in the possession of the U.S. Embassy in Belgium.

Mr. Asciolla received an A.B., *cum laude*, from Boston College in 1987 and a J.D. from Catholic University of America in 1993. As a law student, he served as a member of the *Catholic University Law Review* and was the Co-Founder and Executive Editor of the *CommLaw Conspectus: Journal of Communications Law & Policy*. Additionally, Mr. Asciolla published a Note entitled "Leathers v. Medlock:: Differential Taxation of the Press Survives Under the First Amendment", 41 *Cath. U. Rev.* 507 (1992).

Mr. Asciolla is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York, and the District of Columbia. He is a member of the New York State Bar Association, Commercial & Federal Litigation Section – Antitrust Committee.

## *MICHAEL W. STOCKER, ASSOCIATE*                    *mstocker@labaton.com*

*Michael W. Stocker* represents clients in commercial litigation, with a primary focus on sophisticated class action matters.

Prior to joining Labaton Sucharow, Mr. Stocker worked as a senior associate at Berman DeValerio Pease Tabacco Burt & Pucillo on securities and antitrust class action cases.

Earlier in his career, Mr. Stocker worked as a senior staff attorney with the United States Court of Appeals for the Ninth Circuit, and completed a legal externship with United States Magistrate Judge (now District Judge) Phyllis J. Hamilton of the Northern District of California.

Mr. Stocker has served on the boards of the University of California San Francisco's AIDS Health Project and AIDS Benefits Counselors, and has worked for the Immigrant HIV Assistance Project and the Volunteer Legal Services Program in San Francisco as well as Legal Assistance for Seniors in Oakland, California.

Mr. Stocker earned a B.A. from the University of California, Berkeley, in 1989 and a J.D. from the University of California, Hastings College of Law, in 1995. He is admitted to practice in California as well as before the United States District Courts for the Northern and Central District of California, and the United States Court of Appeals for the Ninth Circuit.

## KELLIE SAFAR-LERNER, ASSOCIATE                     *klerner@labaton.com*

*Kellie Safar-Lerner* focuses her practice on representing consumers, businesses and governmental entities in complex antitrust actions in the pharmaceutical, automotive, chemical and food industries. Since joining the Firm, Ms. Safar-Lerner has litigated a wide variety of antitrust claims, including price-fixing, unlawful boycotting, monopolization, and monopoly leveraging cases. Currently, Ms. Safar-Lerner is representing clients in the following cases: *In re Abbott Labs Norvir Antitrust Litigation*, *In re New Motor Vehicles Canadian Export Antitrust Litigation*, and *In re Funeral Consumers Antitrust Litigation*.

She is a member of the New York State Bar Association, Commercial & Federal Litigation Section – Antitrust Committee, the Women in Antitrust Committee, and the Federal Bar Council. She has also provided pro bono assistance to the Lawyers' Committee for Civil Rights Under Law and the AARP.

Ms. Safar-Lerner obtained a B.A. from Rutgers University in 1999, where she graduated Phi Beta Kappa and with honors. She received a J.D. from Rutgers Law School in 2003. While in law school, she served as Managing Editor of the Rutgers Computer and Technology Law Journal and as a Board Member of the Moot Court Board. She also worked as a Legal Aide in the Antitrust Bureau of the New York Attorney General's Office.

Ms. Safar-Lerner is admitted to practice in New York and New Jersey.

## JESSICA J. BOXER, ASSOCIATE                                jboxer@labaton.com

*Jessica J. Boxer* represents consumers and businesses in cases involving price fixing, monopolization, and other anticompetitive practices.

Ms. Boxer earned a B.S., *cum laude*, from the University of Florida in 2001 and a J.D. from Nova University School of Law in 2005. While in law school, Ms. Boxer took opportunities to attend the University of Miami School of Law as well as Hofstra University School of Law as a guest student. During her second year, she authored an article entitled "E-Ticketing Sites: Sacrificing Consumer Protection for Ease of Travel," which was subsequently published in Issue One of the February 2005 International Travel Law Journal. Prior to attending law school, she served as Program Director at a non-profit agency dedicated to providing particularized caregiver services at no cost to infirm senior citizens throughout South Florida.

Ms. Boxer is admitted to practice in New York and New Jersey. She is a member of the American Bar Association.

## VICKY KU, ASSOCIATE                                        vku@labaton.com

*Vicky Ku* joined Labaton Sucharow as an associate in the winter of 2006. She works in the Firm's Antitrust Practice Group, representing consumers and businesses in cases involving price fixing, monopolization, and other anticompetitive practices. Currently, Ms. Ku is actively involved in the *In re TriCor Indirect Purchaser Antitrust Litigation*.

Ms. Ku earned her J.D. from the Hofstra University School of Law in May 2005. During law school, Ms. Ku interned at the New York State Attorney General's Office in the Antitrust Bureau. She also was the Managing Editor of Articles for the *Family Court Review* and published two student notes,

including a note for the *Yale Journal of Law and Technology*. Ms Ku obtained her B.A. in Communications from California State University, Fullerton in 1997.

Prior to law school, Ms. Ku worked in the high-tech public relations industry for five years and received numerous awards based on crisis communications plans developed for clients that included Microsoft, Sun Microsystems and Taiwan Semiconductor Manufacturing Corp.

Ms. Ku is admitted to practice in New Jersey.

## *MORISSA FALK, ASSOCIATE*                    *mfalk@labaton.com*

*Morissa Falk* represents consumers and businesses in cases involving price fixing, monopolization, and other anticompetitive practices. Currently, Ms. Falk is representing clients in *In re Air Cargo Antitrust Litigation* and *Funeral Consumers Alliance, et al. v. Service Corporation Int'l et al.*

Ms. Falk earned a B.A. from Haverford College in 2003. She received a J.D. from Brooklyn Law School in 2006, graduating on the Dean's List. While in law school, Ms. Falk interned at the Office of the New York State Attorney General in the Civil Rights Bureau, various women's rights organizations and the Appellate Division of the Supreme Court for the State of New York. She also was a member of the Legal Association of Activist Women.

Ms. Falk is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York. She is a member of the Association of the Bar of the City of New York and the New York State Bar Association, Commercial & Federal Litigation Section – Antitrust Committee.